[No. S033096. May 12, 1994.]

JULIE LORETTA GLASS FERMINO, Plaintiff and Appellant, v. FEDCO, INC. et al., Defendants and Respondents.

COUNSEL

Robert M. Ball for Plaintiff and Appellant.

Joseph Posner, John Howard, Quackenbush & Quackenbush and William C. Quackenbush as Amici Curiae on behalf of Plaintiff and Appellant.

McClintock, Weston, Benshoof, Rochefort, Rubalcava & MacCuish, Steven W. Weston, Andrew M. Gilford and Eugene A. Burrus for Defendants and Respondents.

O'Melveny & Myers, Stephen P. Pepe and Janet I. Swerdlow as Amici Curiae on behalf of Defendants and Respondents.

OPINION

**MOSK, J.**—In this case we consider whether an employee subject to false imprisonment at the hands of her employer may sue that employer in a civil action, or whether such a suit is barred by the exclusivity provisions of the Workers' Compensation Act (Lab. Code, §§ 3600, 3602). We conclude that her suit would not be barred, because an employer that falsely imprisons its employee has stepped outside its proper role, and an injury resulting therefrom is beyond the scope of what we have termed the "compensation bargain."

## I. STATEMENT OF FACTS

Because this case comes to us after the sustaining of a demurrer, all well-pleaded allegations of the complaint will be taken as true. (*Livitsanos* v. *Superior Court* (1992) 2 Cal.4th 744, 747 [7 Cal.Rptr.2d 808, 828 P.2d 1195].)

The facts, as stated in plaintiff's second amended complaint, are as follows. Plaintiff Fermino was employed as a salesclerk in defendant's department store, working in the jewelry department. The store's personnel manager summoned her to a windowless room, and proceeded to interrogate her concerning her alleged theft of the proceeds of a $4.95 sale to a customer. The personnel manager was joined by the store's loss prevention

manager and by two security agents. One of the security agents stated that a customer and an employee, who were waiting in the next room, had witnessed the theft. He then demanded that Fermino confess. He told her that the interrogation could be handled in two ways: the "Fedco way" or the "system way." The "Fedco way" was to award points each time she denied her guilt. When 14 points were reached, she would be handled the "system" way, i.e., handed over to the police. After each of plaintiff's repeated and vehement denials, the security agent said "one point." The loss prevention manager "hurled profanities" and demanded that Fermino confess.

Fermino's repeated requests to leave the room and to call her mother were denied. She was physically compelled to remain in the room for more than one hour. At one point Fermino rose out of her chair and walked toward the door of the interrogation room in an attempt to leave; however, as soon as she made a move toward the door, one of the security guards slid in front of the door, threw up a hand and gestured her to stop.

Finally, Fermino became hysterical, and broke down in tears. At this point her interrogators departed from the room. Upon returning, they admitted no employee or customer was waiting to testify against her. They further stated they believed her, and that she could leave.

As the result of this incident, Fermino sustained unspecified physical injury and "shock and injury to her nervous system and person," as well as "mental anguish and emotional distress." Fermino sued for false imprisonment, as well as intentional and negligent infliction of emotional distress. She claimed that the false imprisonment resulted from a method of interrogation that was approved company policy.

Defendant Fedco demurred on the grounds that Fermino's claim was barred by the Workers' Compensation Act (hereafter the Act), and in particular the exclusivity provisions of Labor Code sections 3600 and 3602, (hereafter the exclusivity rule). The trial court sustained the demurrer. A divided Court of Appeal upheld the trial court, relying on the statute, and on our decisions in *Shoemaker* v. *Myers* (1990) 52 Cal.3d 1 [276 Cal.Rptr. 303, 801 P.2d 1054, 20 A.L.R.5th 1016] (hereafter *Shoemaker*) and *Cole* v. *Fair Oaks Fire Protection Dist.* (1987) 43 Cal.3d 148 [233 Cal.Rptr. 308, 729 P.2d 743] (hereafter *Cole*). Only the false imprisonment claim has been raised in Fermino's petition for review with this court.

## II. DISCUSSION

Labor Code section 3600, subdivision (a),[1] provides that, subject to certain particular exceptions and conditions, workers' compensation liability, "in lieu of any other liability whatsoever" will exist "against an employer for any injury sustained by his or her employees arising out of and in the course of the employment." As we have recognized, the basis for the exclusivity rule in workers' compensation law is the "presumed 'compensation bargain,' pursuant to which the employer assumes liability for industrial personal injury or death without regard to fault in exchange for limitations on the amount of that liability. The employee is afforded relatively swift and certain payment of benefits to cure or relieve the effects of industrial injury without having to prove fault but, in exchange, gives up the wider range of damages potentially available in tort." (*Shoemaker, supra,* 52 Cal.3d at p. 16.)

We recognized in *Shoemaker* and elsewhere, however, that certain types of injurious employer misconduct remain outside this bargain. There are some instances in which, although the injury arose in the course of employment, the employer engaging in that conduct " 'stepped out of [its] proper role[ ]' " or engaged in conduct of " 'questionable relationship to the employment.' " (*Shoemaker, supra,* 52 Cal.3d at p. 16, quoting *Cole, supra,* 43 Cal.3d at p. 161.)

Fermino took the position below that her false imprisonment was in fact an instance of an employer acting outside of its proper role.[2] The Court of Appeal disagreed. It regarded Fedco's action as merely a form of employee interrogation, as normal as "demotions, promotions, criticism of work practices, and frictions in negotiations as to grievances . . . ." (*Cole, supra,* 43 Cal.3d at p. 160.) The court concluded that in this case, as in *Cole,* the mere fact that the practice was characterized as intentionally tortious and calculated to cause the employee harm was not sufficient to place the conduct outside the scope of the workers' compensation system.

We agree that a proper understanding of *Cole,* and the related line of cases preceding and succeeding it regarding the relationship between intentional torts and worker's compensation, is important for deciding the case before us. We find however, that the Court of Appeal has misapplied the doctrine

---

[1] All statutory references are to the Labor Code, unless otherwise indicated.

[2] On petition for review and briefing in this court, Fermino adopted another theory for challenging the workers' compensation bar as applied to false imprisonment: that false imprisonment is not an "injury" within the meaning of section 3600. This was the position taken by the dissent in the Court of Appeal, and by various other jurisdictions. (See fn. 6, *post.*) We express no opinion as to that theory.

that has emerged from these cases. A brief review of that doctrine is appropriate.

### A. *The Place of Intentional Torts in the Workers' Compensation System.*

In a majority of jurisdictions, all or virtually all intentionally tortious acts committed by an employer against an employee in the course of employment are excluded from the workers' compensation system. (See 2A Larson, Workmen's Compensation Law (1993) § 68.11, pp. 13-1 to 13-7 and fns. 1-2.) These jurisdictions typically have statutes that provide, or are construed as providing, that only "accidental" workplace injuries are to be covered by workers' compensation (*ibid.*; see, e.g., Miss. Code Ann. § 71-3-3(b) (1993); N.J. Stat. Ann. § 34:15-1 (1993); Utah Code Ann. § 35-1-45 (1993)) or have statutes that explicitly exclude intentional torts (Mich. Comp. Laws § 418.131 (1994); Wash. Rev. Code Ann. § 51.24.020 (1994)). Courts also rely on general public policy considerations to exclude intentional torts from the compensation systems. As the Utah Supreme Court declared, "[i]t would serve no social purpose to allow an employee to intentionally injure another employee engaged in the same employment, then use an otherwise socially beneficial, remedial, statute as a shield for such wrongdoing." (*Bryan* v. *Utah International* (Utah 1975) 533 P.2d 892, 894; see also *Newby* v. *Gerry* (1984) 38 Wn.App. 812 [690 P.2d 603, 607], and cases cited therein.) Employees in these jurisdictions are therefore free to pursue civil actions against employers that engage in intentionally tortious conduct.

In California, the place of intentional torts in the workers' compensation system has been somewhat more complicated, for at least two reasons. First, the workers' compensation exclusivity statute (§ 3600), which declares that "any injury . . . arising out of and in the course of . . . employment" is covered by the Act, is unqualified by any reference to accident or intentional tort. Second, section 4553 provides that employees shall have their workers' compensation awards "increased [by] one-half" if the employee's injury results from the employer's "serious and willful misconduct." The Legislature, it would seem, has thereby evinced its intent to include at least some portion of what are classified as "intentional torts" within the workers' compensation system.

It is equally true, however, that the Legislature has not expressed clearly its intent to categorically exclude from the courts all intentional torts committed by employers against employees. Section 3600, which declares the exclusivity of the workers' compensation remedy, provides that workers' compensation liability will exist "in lieu of any other liability whatsoever

. . . without regard to negligence . . . ." (§ 3600, subd. (a), italics added.) In *Mathews* v. *Workmen's Comp. Appeals Bd.* (1972) 6 Cal.3d 719, 728 [100 Cal.Rptr. 301, 493 P.2d 1165], we concluded, after extensive review of the applicable constitutional and legislative history of the Act, that the 1918 constitutional amendment (now Cal. Const., art. XIV, § 4) which establishes the workers' compensation system "irrespective of . . . fault," should be read in light of section 6 of the 1917 Act (Stats. 1917, ch. 586, § 6, p. 834, now codified at § 3600) which contains the above quoted reference to negligence. As we recognized in *Mathews*, both the language and the legislative history of the Act make clear that the Legislature, in setting the terms of the compensation bargain, was focused on eliminating "common law tort concepts of negligence." (6 Cal.3d at p. 728, italics omitted.) Thus focused, the Legislature did not explicitly address the place of common law intentional torts in the workers' compensation system.

This legislative ambiguity is compounded by case law construing section 4553, which suggests that the concept of "serious and willful misconduct" is not completely congruent with that of intentional common law tort. Rather, "serious and willful misconduct" has been viewed, as one court expressed it, as an intermediate form of wrongdoing falling somewhere "between ordinary negligence and an intentional act." (*Magliulo* v. *Superior Court* (1975) 47 Cal.App.3d 760, 779 [121 Cal.Rptr. 621]; see, e.g., *Rogers Materials Co.* v. *Ind. Acc. Com.* (1965) 63 Cal.2d 717, 724 [48 Cal.Rptr. 129, 408 P.2d 737] [holding that employer recklessness creating an injurious safety hazard will give rise to section 4553 damages].)

Prior to 1980, this lack of legislative clarity, as well as the preponderance of authority from other jurisdictions and the reluctance to permit intentionally tortious conduct to go lightly punished, led most California courts to conclude that civil actions based on at least some such conduct were not barred by the exclusivity rule. In particular, most courts held that intentional assaultive acts by an employer were outside the scope of the compensation bargain. The conclusion of *Conway* v. *Globin* (1951) 105 Cal.App.2d 495 [233 P.2d 612] was typical: intentional assault on an employee was not to be considered "a risk or condition incident to the employment." (*Id.* at p. 498.) To hold to the contrary would be to "sanction indirectly conduct of the employer which is both tortious and criminal . . . ." (*Ibid.*; accord, *Carter* v. *Superior Court* (1956) 142 Cal.App.2d 350, 355 [298 P.2d 598] [agreeing with *Conway*, but holding plaintiff had forfeited right to a civil action by electing to pursue workers' compensation claim]; *Magliulo* v. *Superior Court, supra,* 47 Cal.App.3d 760, 779; *Meyer* v. *Graphic Arts International Union* (1979) 88 Cal.App.3d 176, 178 [151 Cal.Rptr. 597] [assault and false imprisonment not barred]; see also *Iverson* v. *Atlas Pacific Engineering*

(1983) 143 Cal.App.3d 219 [191 Cal.Rptr. 696] [accord with *Meyer*]; but see *Azevedo* v. *Abel* (1968) 264 Cal.App.2d 451, 459-460 [70 Cal.Rptr. 710] [assault barred by exclusivity rule].)

The cases also inferred an exception to the exclusivity rule when an employer engages in certain types of fraud. In *Unruh* v. *Truck Insurance Exchange* (1972) 7 Cal.3d 616 [102 Cal.Rptr. 815, 498 P.2d 1063], we held that a workers' compensation insurance carrier, who, as investigator of a compensation claim, essentially stands in the place of the employer and is therefore protected by the exclusivity rule, loses that protection when it engages in fraud, thereby stepping out of its "proper role." (*Id.* at p. 630; see also *Ramey* v. *General Petroleum Corp.* (1959) 173 Cal.App.2d 386, 402-403 [343 P.2d 787] [employer who conspires with third party to conceal from employee his potential civil action against that party is not protected by the exclusivity rule from employee's fraud action].)

We attempted greater clarification of the place of intentional torts in the workers' compensation system in *Johns-Manville Products Corp.* v. *Superior Court* (1980) 27 Cal.3d 465 [165 Cal.Rptr. 858, 612 P.2d 948, 9 A.L.R.4th 758] (hereafter *Johns-Manville*). In that case the plaintiff was an asbestos manufacturing company employee who had contracted various diseases related to long-term exposure to asbestos. He claimed that his employer had intentionally harmed him in two respects: first, by concealing from him the knowledge that working with asbestos was dangerous, failing to provide proper protective equipment, and knowingly violating government regulations relating to the dust level in the plant; second, by willfully withholding medical information on the existence and genesis of plaintiff's asbestos-related diseases from the plaintiff's physician.

We rejected the first of plaintiff's claims. Reviewing cases in which section 4553 had been applied, we observed that they often involve instances in which an employer "put his mind" to the existence of workplace danger but failed to take corrective action, and the extra compensation provisions of that section were designed to specially sanction such deliberate employer wrongdoing. We noted that to allow a civil action in these instances "would undermine the underlying premise upon which the workers' compensation system is based" because the "focus of the inquiry in a case involving work-related injury would often be not whether the injury arose out of and in the course of employment, but the state of knowledge of the employer and the employee regarding the dangerous condition which caused the injury." (*Johns-Manville, supra*, 27 Cal.3d at p. 474.)

Nonetheless, we concluded that plaintiff's second claim of injury was not barred. We recognized that "where the employer is charged with intentional

misconduct which goes beyond his failure to assure that the tools or substances used by the employee or the physical environment of a workplace are safe, some cases have held that the employer may be subject to common law liability." (*Johns-Manville, supra,* 27 Cal.3d at p. 475.) We acknowledged that the cases did not provide "a tidy and consistent rationale" but noted a trend to allow an action at law "if the employer acts deliberately for the purpose of injuring the employee or if the harm resulting from the intentional misconduct consists of aggravation of an initial work-related injury." (*Id.* at p. 476.) We thus permitted an action at law against the employer-defendant for fraudulent concealment.[3]

This court returned to the subject of intentional torts and workers' compensation in *Cole, supra,* 43 Cal.3d 148. In *Cole,* we considered a fire captain's claims against a fire department and its chief for intentional infliction of emotional distress. He alleged that he had been unfairly demoted, that the demotion proceedings were tantamount to a " 'kangaroo' " court, and that as the result of the demotion he was compelled to perform " 'humiliating and menial duties.' " (*Id.* at pp. 152-153.)

We held, nonetheless, that his claim was barred by workers' compensation. We reasoned that a supervisor's conduct was "inherently 'intentional.' In order to properly manage its business, every employer must on occasion review, criticize, demote, transfer and discipline employees. Employers are necessarily aware that their employees . . . may consider any such adverse action to be improper and outrageous." (*Cole, supra,* 43 Cal.3d at p. 160.)

We concluded that "when the misconduct attributed to the employer is actions which are a normal part of the employment relationship, such as demotions, promotions, criticism of work practices, and frictions in negotiations as to grievances, an employee suffering emotional distress causing disability may not avoid the exclusive remedy provisions of the Labor Code by characterizing the employer's decisions as manifestly unfair, outrageous, harassment, or intended to cause emotional disturbance resulting in disability." (*Cole, supra,* 43 Cal.3d at p. 160.) This conclusion was necessitated by the reality that "If characterization of conduct normally occurring in the workplace as unfair or outrageous were sufficient to avoid the exclusive remedy provisions of the Labor Code, the exception would permit the employee to allege a cause of action in every case where he suffered mental disability merely by alleging an ulterior purpose of causing injury." (*Ibid.*)

---

[3]In 1982, the Legislature essentially ratified the holdings in *Conway* v. *Globin, supra,* 105 Cal.App.2d 495, *Magliulo* v. *Superior Court, supra,* 47 Cal.App.3d 760, and *Johns-Manville, supra,* by exempting, in amendments to section 3602, injury caused by "a willful physical assault by the employer" (§ 3602, subd. (b)(1)) and "fraudulent concealment" of an employment injury (§ 3602, subd. (b)(2)).

The substance and effect of these 1982 amendments to the Act are further discussed in part II.B., *post,* of this opinion.

Thus in *Cole* this court faced a question similar to the issue recognized in *Johns-Manville*: whether employer conduct that appeared on its face to be a normal part of the employment relationship could be brought outside the exclusivity rule merely because the mental state of the employer rendered the conduct intentionally or knowingly tortious. We recognized in *Cole*, as we did in *Johns-Manville*, that to permit a plaintiff's civil claims in these cases would be to "undermine the underlying premise upon which the workers' compensation system is based" (*Johns-Manville, supra,* 27 Cal.3d at p. 474), by changing the focus of the inquiry from the employer's conduct to the employer's state of mind.

Our holding in *Cole* can also be seen in some sense as dictated by the apparent amorphous nature of the tort of intentional infliction of emotional distress, and the particular potential that tort had for subverting the exclusivity of workers' compensation remedies. We had previously held that a defendant's actions could be characterized as "outrageous" for purposes of tort liability for intentional infliction of emotional distress, if he " '(1) abuses a relation or position which gives him power to damage the plaintiff's interest; (2) knows the plaintiff is susceptible to injuries through mental distress; or (3) acts intentionally or unreasonably with the recognition that the acts are likely to result in illness through mental distress.' " (*Agarwal* v. *Johnson* (1979) 25 Cal.3d 932, 946 [160 Cal.Rptr. 141, 603 P.2d 58].) In the employment context this broadly defined tort potentially could be the exception that swallows up the exclusivity rule, because an employer or supervisor is generally in a position that gives him power to damage the employee's interests through ordinary acts of discipline, and must often act with the recognition that such acts will cause the employee mental distress. (*Cole, supra,* 43 Cal.3d at p. 160.) Therefore, we concluded that if the everyday actions of employment were in fact carried out in a manner deliberately intended to cause the employee harm, then the injured employee could arguably claim a right to extra compensation under section 4553, but could not initiate a civil action. (43 Cal.3d at p. 161.)

Nevertheless in *Cole*, as in *Johns-Manville*, we continued to recognize that "[t]he cases . . . have permitted recovery in tort for intentional misconduct causing disability . . . involv[ing] conduct of an employer having a questionable relationship to the employment, an injury which did not occur while the employee was performing service incidental to the employment and which would be viewed as a risk of the employment, or conduct where the employer or insurer *stepped out of their proper roles*. [Citations.]" (*Cole, supra,* 43 Cal.3d at p. 161, italics added; accord, *Shoemaker, supra,* 52 Cal.3d 1, 16.)

Thus *Cole* and *Johns-Manville* contemplated a tripartite system for classifying injuries arising in the course of employment. First, there are

injuries caused by employer negligence or without employer fault that are compensated at the normal rate under the workers' compensation system. Second, there are injuries caused by ordinary employer conduct that intentionally, knowingly or recklessly harms an employee, for which the employee may be entitled to extra compensation under section 4553. Third, there are certain types of intentional employer conduct which bring the employer beyond the boundaries of the compensation bargain, for which a civil action may be brought.

Cases decided after *Cole* have elaborated on this third category. In *Hart* v. *National Mortgage & Land Co.* (1987) 189 Cal.App.3d 1420 [235 Cal.Rptr. 68] (hereafter *Hart*), the court considered whether a civil action for intentional infliction of emotional distress and battery, based on a supervisor's persistent personal harassment of an employee that included acts of physical molestation and deliberate humiliation, was barred by the exclusivity rule. In holding that the action for intentional infliction of emotional distress was permitted, the court distinguished the case from *Cole*. Unlike the demotion in *Cole*, the campaign of harassment directed against the plaintiff-employee "had a questionable relationship to employment, and [was] neither a risk, an incident, nor a normal part of Hart's employment . . . ." (*Hart, supra,* 189 Cal.App.3d at p. 1430.)

The *Hart* court therefore distinguished its case from *Cole* by looking to the employer's conduct, rather than its state of mind. The employer, in engaging in this campaign of harassment, used behavior that could not be considered a normal risk of employment. (*Hart, supra,* 189 Cal.App.3d at p. 1430; see also *Livitsanos* v. *Superior Court, supra,* 2 Cal.4th 744, 756 [concluding that campaign of harassment that involved possible defamation and economic coercion presented a question for remand as to whether such action was a normal part of the employment relationship].)

In *Gantt* v. *Sentry Insurance* (1992) 1 Cal.4th 1083 [4 Cal.Rptr.2d 874, 824 P.2d 680] (hereafter *Gantt*), we further clarified the "proper role" exception to the exclusivity rule. In that case, the plaintiff was demoted and constructively discharged for no reason other than his support for a fellow employee, who was the victim of sexual harassment, and his refusal to testify untruthfully or withhold testimony in the course of the Department of Fair Employment and Housing investigation. (*Id.* at p. 1096.) We concluded that "[w]hen an employer's decision to discharge an employee results from an animus that violates the fundamental policy of this state . . . , such misconduct cannot under any reasonable viewpoint be considered a 'normal part of the employment relationship.' " (*Id.* at p. 1100.)

■ *Gantt* thus further defines the doctrine formulated in *Johns-Mansville* and *Cole*. The case makes clear that any inquiry into an employer's motivation is undertaken not to determine whether the employer intentionally or

knowingly injured the employee, but rather to ascertain whether the employer's conduct violated public policy and therefore fell outside the compensation bargain. Such a narrow inquiry poses none of the dangers recognized in *Johns-Manville* and *Cole* that the normal conduct of an employer could be excepted from the exclusivity rule merely because it was characterized as deliberately harmful to the employee.[4]

Our judgment that a discharge in violation of public policy was not a " 'normal part of the employment relationship' " did not constitute a factual statement about the frequency of such public policy discharges, but rather a declaration grounded in public policy itself that such discharges should not be a part of the workplace, however common they may be. (*Gantt, supra*, 1 Cal.4th at p. 1100.) Thus, we analogized to a contractual agreement: "Just as the individual employment agreement may not include terms which violate fundamental public policy [citation], so the more general 'compensation bargain' cannot encompass conduct, such as sexual or racial discrimination 'obnoxious to the interests of the state and contrary to public policy and sound morality.' " (*Id.* at p. 1101.)

With these considerations in mind, we now turn to the question whether Fedco's alleged false imprisonment of Fermino falls within the scope of the compensation bargain.

B. *False Imprisonment and Workers' Compensation.*

■ The crime of false imprisonment is defined by Penal Code section 236 as the "unlawful violation of the personal liberty of another." The tort is identically defined. (*Molko* v. *Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1123 [252 Cal.Rptr. 122, 762 P.2d 46].) As we recently formulated it, the tort consists of the " 'nonconsensual, intentional confinement of a person, without lawful privilege, for an appreciable length of time, however short.' " (*Ibid.*) That length of time can be as brief as 15 minutes. (*Alterauge* v. *Los Angeles Turf Club* (1950) 97 Cal.App.2d 735, 736 [218 P.2d 802].) Restraint may be effectuated by means of physical force (*Moffat* v. *Buffums' Inc.* (1937) 21 Cal.App.2d 371, 374 [69 P.2d 424]), threat of force or of arrest (*Vandiveer* v. *Charters* (1930) 110 Cal.App. 347, 351 [294 P. 440]), confinement by physical barriers (*Schanafelt* v. *Seaboard Finance Co.* (1951) 108 Cal.App.2d 420, 423 [239 P.2d 42]), or by means of any other form of unreasonable duress. (See Rest.2d Torts, § 40A.)

---

[4]We recognize that the plaintiff in *Cole* alleged his demotion was the result of union activity, and as such his demotion might have been characterized as a public policy discharge within the meaning of *Gantt* and *Tameny* v. *Atlantic Richfield Co.* (1980) 27 Cal.3d 167 [164 Cal.Rptr. 839, 610 P.2d 1330, 9 A.L.R.4th 314]. However, the issue was not developed by the parties below in that case, and was never properly before us. (See Cal. Rules of Court, rule 29(b)(1).)

■ The only mental state required to be shown to prove false imprisonment is the intent to confine, or to create a similar intrusion. (Prosser & Keeton, Torts (5th ed. 1984) § 11, pp. 52-53; cf. *Weaver* v. *Bank of America* (1963) 59 Cal.2d 428, 433-435 [30 Cal.Rptr. 4, 380 P.2d 644] [bank's act of failing to honor check, inadvertently leading to the plaintiff's arrest and imprisonment, cognizable as a tort of negligence].) Thus, the intent element of false imprisonment does not entail an intent or motive to cause harm; indeed false imprisonments often appear to arise from initially legitimate motives. (See, e.g., *Schanafelt* v. *Seaboard Finance Co.*, *supra*, 108 Cal.App.2d 420, 422-423 [judgment against defendant upheld where defendant used false imprisonment in repossession of plaintiff's furniture after payment delinquency].)

■ Merchants who detain individuals whom they have probable cause to believe are about to injure their property are privileged against a false imprisonment action. (*Collyer* v. *S.H. Kress & Co.* (1936) 5 Cal.2d 175, 180-181 [54 P.2d 20].) The detention itself must be carried out for a reasonable time and in a reasonable manner. Thus, this court upheld a 20-minute detention of a department store customer whom store personnel had probable cause to suspect was in the process of stealing merchandise, and who was being held until the police arrived. (*Ibid.*) This common law privilege has been codified at Penal Code section 490.5, subdivision (f)(1): "A merchant may detain a person for a reasonable time for the purpose of conducting an investigation in a reasonable manner whenever the merchant has probable cause to believe the person to be detained is attempting to unlawfully take or has unlawfully taken merchandise from the merchant's premises." The Legislature made clear that the provisions of subdivision (f)(1) "do not constitute a change in, but are declaratory of, the existing law . . . ." (Stats. 1976, ch. 1131, § 3, p. 5049.)

A case factually similar to the matter at hand illustrates the limits of the merchant's privilege. In *Moffat* v. *Buffums' Inc.*, *supra*, 21 Cal.App.2d 371, plaintiff, an employee of defendant corporation, was suspected of stealing money from that corporation. She was detained for approximately five hours, while agents of the corporation attempted to coerce her into confessing. Defendant claimed the merchant's privilege, but the court disagreed, finding the detention unreasonable, as it was not done to stop a theft in progress or "for the purpose of investigation, but, on the contrary, . . . for the purpose of securing a confession to the theft of money at a prior time. The alleged offense had been completed and the manner of detention was unreasonable." (*Id.* at p. 375.)

The defendant also claimed that no false imprisonment had taken place because the employee had received her usual compensation for the time

during which she was held in interrogation, and she was therefore merely performing an employment-related service during that time. The court rejected that contention, responding that the statutory and implied contractual provisions that require an employee to follow an employer's directions (Lab. Code, § 2856 [Civ. Code, former § 1981] et seq.) "do not authorize the employer to forcibly detain the person of an employee for the purpose of compelling a confession of a theft of the employer's property at some prior time." (*Moffat* v. *Buffums' Inc., supra,* 21 Cal.App.2d at pp. 374-375; accord, *Parrott* v. *Bank of America* (1950) 97 Cal.App.2d 14, 23-24 [217 P.2d 89, 35 A.L.R.2d 263] [upholding a false imprisonment verdict against an employer for an approximately three-hour detention of an innocent employee suspected of theft].)

In contrast, Fedco argues that its own actions were a normal part of employment. It correctly claims for itself the right to "monitor the security at its workplace," and, indeed, to "*insist* on its right to investigate employee theft even if the suspected employee wishes not to be questioned." Therefore, it concludes that "[t]he right to question a salesperson employee regarding a possible theft" means that its interrogation of Fermino is to be considered within the scope of the compensation bargain.

We agree that all reasonable attempts to investigate employee theft, including employee interrogation, are a normal part of the employment relationship. It is also true that all such reasonable interrogation or voluntary confinement cannot be regarded as false imprisonment and is not actionable. (Pen. Code, § 490.5, subd. (f)(1); *Collyer* v. *S.H. Kress & Co., supra,* 5 Cal.2d at pp. 180-181.) The question we must decide is whether an employer's actions that go beyond the bounds of reasonable interrogation and detention, and constitute false imprisonment, are entitled to the same protections of the exclusivity rule as would a reasonable detention.

We have held, as discussed above, that normal employer actions causing injury would not fall outside the scope of the exclusivity rule merely by attributing to the employer a sinister intention. (*Cole, supra,* 43 Cal.3d at p. 160.) Conversely, as subsequent cases show, actions by employers that have no proper place in the employment relationship may not be made into a "normal" part of the employment relationship merely by means of artful terminology. Indeed, virtually any action by an employer can be characterized as a "normal part of employment" if raised to the proper level of abstraction. The constructive discharge in *Gantt* can be seen as merely another discharge, and therefore "normal." Likewise, the harassment in *Hart* and *Livitsanos* may be viewed as a "personal conflict" between an employee and a supervisor, also a not uncommon feature of an employment relationship.

What matters, then, is not the label that might be affixed to the employer conduct, but whether the conduct itself, concretely, is of the kind that is within the compensation bargain. In this case, Fermino does not contend, as the plaintiff did in *Cole*, that seemingly ordinary employer disciplinary actions become tortious when seen in light of the employer's malicious state of mind. Rather, Fermino here claims that the acts themselves were prima facie outside the employer's "proper role," irrespective of Fedco's intent to harm, because they criminally deprived her of her liberty and therefore were beyond the scope of the compensation bargain. *Cole* therefore does not dispose of the present case. What we must decide is whether false imprisonment is the sort of employer conduct that can ever be viewed as a normal aspect of the employment relationship.

As noted above, the earliest California cases to adjudicate false imprisonment claims in the workplace context did not even consider the question whether the exclusivity rule might bar a civil claim; they assumed that it did not. (*Parrot* v. *Bank of America, supra*, 97 Cal.App.2d 14, 23-24; *Moffat* v. *Buffums' Inc., supra*, 21 Cal.App.2d 371.) Two more recent Court of Appeal cases have concluded that false imprisonment of an employee, in conjunction with assault and battery, was actionable at law. *Meyer* v. *Graphic Arts International Union, supra*, 88 Cal.App.3d 176, concerned a female employee who had been forcibly confined and sexually assaulted on three occasions by fellow employees, despite complaints to her employer. The court concluded that her civil action was not barred, citing the dictum in *Magliulo* v. *Superior Court, supra*, 47 Cal.App.3d at pages 767-768, that " ' "[i]ntentional injury inflicted by [an] employer . . . on his employee may be made the subject of a common-law action for damages on the theory that, in such an action, the employer will not be heard to say that his intentional act was an 'accidental' injury and so under . . . provisions of the compensation act . . ." [citations].' " (*Meyer* v. *Graphic Arts International Union, supra*, 88 Cal.App.3d at p. 178 [hereafter *Meyer*].)

In *Iverson* v. *Atlas Pacific Engineering, supra*, 143 Cal.App.3d 219 (hereafter *Iverson*), an employee was confined in a small space and forced to endure loud crashing noises from a large sledgehammer by a fellow employee, an action the employer ratified. The court, relying in large part on *Meyer*, held that the plaintiff had stated a cause of action for false imprisonment and assault not barred by the exclusivity rule. (*Id.* at p. 229.)

Although the basis for *Meyer*'s and *Iverson*'s holdings appears to be overbroad, implying that all intentional torts are categorically excepted from the exclusivity rule, we find the results of these cases to be unassailable. Both cases concerned employer acts of assault, as well as false imprisonment. The case law in this state holding that an employer's assault is not

protected by the exclusivity rule has been ratified by the Legislature in its 1982 amendment of section 3602, subdivision (b)(1), which explicitly permits civil actions based on "willful physical assault by the employer." But these cases and the 1982 amendments do not address explicitly the question before us: whether an employee action against an employer for false imprisonment alone, unalloyed with any allegations of assault, will be permitted under sections 3600 and 3602.

 Amicus curiae Merchants' and Manufacturers' Association contends that the 1982 amendments to section 3602,[5] far from aiding Fermino's case, express the legislative intent to bar an employee's civil claim against an employer for false imprisonment. They contend the exceptions to the rule enumerated in the statute, including that for "willful physical assault by the employer," are the only exceptions legislatively permitted. Since false imprisonment is not among those exceptions, an action at law based on that conduct must be prohibited by the exclusivity rule. We disagree.

Section 3602, as amended in 1982, did not invent the exclusivity rule, which had existed since 1917 in section 6 of the original act (Stats. 1917, ch. 586, § 6, p. 834) and which was later codified in section 3600. Rather, the amended section 3602 responded to specific judicial developments that had expanded the exceptions to that rule, ratifying some of those exceptions and disapproving of others. The reiteration of the exclusivity rule in section

---

[5]Section 3602 now reads in full: "(a) Where the conditions of compensation set forth in Section 3600 concur, the right to recover such compensation is, except as specifically provided in this section and Sections 3706 and 4558, the sole and exclusive remedy of the employee or his or her dependents against the employer, and the fact that either the employee or the employer also occupied another or dual capacity prior to, or at the time of, the employee's industrial injury shall not permit the employee or his or her dependents to bring an action at law for damages against the employer.

"(b) An employee, or his or her dependents in the event of his or her death, may bring an action at law for damages against the employer, as if this division did not apply, in the following instances:

"(1) Where the employee's injury or death is proximately caused by a willful physical assault by the employer.

"(2) Where the employee's injury is aggravated by the employer's fraudulent concealment of the existence of the injury and its connection with the employment, in which case the employer's liability shall be limited to those damages proximately caused by the aggravation. The burden of proof respecting apportionment of damages between the injury and any subsequent aggravation thereof is upon the employer.

"(3) Where the employee's injury or death is proximately caused by a defective product manufactured by the employer and sold, leased, or otherwise transferred for valuable consideration to an independent third person, and that product is thereafter provided for the employee's use by a third person.

"(c) In all cases where the conditions of compensation set forth in Section 3600 do not concur, the liability of the employer shall be the same as if this division had not been enacted."

3602, subdivision (a), "[w]here the conditions . . . set forth in section 3600 concur" is made in the context of repealing much of the "dual capacity doctrine." That much-criticized doctrine had significantly eroded the exclusivity rule, expanding employers' at-law liability toward their employees in areas such as product liability by characterizing the employer as acting in the role of "manufacturer" rather than "employer" when it provided its employee with defective products causing injury. (See, e.g., *Bell* v. *Industrial Vangas, Inc.* (1980) 30 Cal.3d 268 [179 Cal.Rptr. 30, 637 P.2d 266].) While overruling this doctrine, the Legislature codified in subdivision (b) other judicially originated exceptions to the exclusivity rule, including those for assault and for fraudulent concealment of an injury found in *Magliulo* v. *Superior Court, supra,* 47 Cal.App.3d 760, and *Johns-Manville, supra,* 27 Cal.3d 465, respectively.

Thus, the 1982 amendments were not intended to provide an exhaustive list of exceptions to the exclusivity rule. They did not, for example, foreclose the recognition of an exception for injuries stemming from wrongful discharges that violated public policy (*Gantt, supra,* 1 Cal.4th 1083, 1097-1101), an issue that neither the Legislature nor the judicial system had confronted in 1982. Section 3602 only applies "[w]here the conditions . . . set forth in section 3600 concur," and does not purport to resolve the ambiguities in that latter section discussed above, nor to definitively delineate the scope of the compensation bargain that has been the key to construing the meaning of section 3600. Rather, section 3602 merely confirms the judicial recognition of certain types of employer acts as outside the compensation bargain, even as it reinforces the exclusivity rule by repealing the dual capacity doctrine.

Therefore it strains credulity to suppose that the Legislature intended, with the 1982 amendments, to bar actions at law for false imprisonment. ▮ Although the Legislature "is deemed to be aware of existing laws and judicial decisions construing the same statute in effect at the time legislation is enacted, and to have enacted and amended statutes in the light of such decisions as have a direct bearing upon them" (*Viking Pools, Inc.* v. *Maloney* (1989) 48 Cal.3d 602, 609 [257 Cal.Rptr. 320, 770 P.2d 732] [internal quotation marks omitted]), it may not be deemed to anticipate future judicial developments. Moreover, this presumed legislative awareness applies only to domestic judicial decisions, and not to those of foreign jurisdictions. (See *Estate of McDill* (1975) 14 Cal.3d 831, 839 [122 Cal.Rptr. 754, 537 P.2d 874]; *Motors Ins. Corp.* v. *Division of Fair Employment Practices* (1981) 118 Cal.App.3d 209, 220-221 [173 Cal.Rptr. 332].) ▮ The issue of whether civil actions based on false imprisonment in the employment context were barred by the exclusivity rule had scarcely been raised in California in 1982,

having been only mentioned in passing in *Meyer, supra,* 88 Cal.App.3d 176. In *Meyer,* as discussed above, the court held that a civil action arising from a personal attack on an employee, involving assault, false imprisonment, and rape, was not barred. (*Id.* at p. 177.) It cannot be inferred either from the context in which the 1982 amendments were passed, or from the language of section 3602 itself, that the Legislature intended to bar actions for false imprisonment when it amended section 3602.

Although we conclude the Legislature did not specifically intend to exclude employment-related false imprisonment from the courts, we are left with the question whether false imprisonment falls within the compensation bargain. It appears evident that at least *some* false imprisonments fall outside the Act. For example, the *Meyer* and *Iverson* cases discussed above, even without the elements of assault, would seem to be outside the compensation bargain because they were nothing more than personal attacks on the employee, unmotivated by any legitimate employer concerns. (See *Hart, supra,* 189 Cal.App.3d 1420.) Moreover, it appears uncontrovertible that an involuntary detainment carried to an extreme, even if motivated by legitimate employer objectives, would cease to be a normal part of the employment relationship. (See, e.g., *Moffat* v. *Buffums' Inc., supra,* 21 Cal.App.2d 371 [employee detained for five hours to coerce her into confessing to minor theft].)

On the other hand, Fedco argues that its alleged false imprisonment was motivated by legitimate employer objectives and was carried out in a manner reasonably related to those objectives. What is implicit in Fedco's position, then, is that there are certain "reasonable" false imprisonments, that may be considered a normal part of the employment relationship, distinguished from "unreasonable" false imprisonments that are either motivated by illegitimate ends or that employ disproportionate means. But a "reasonable" false imprisonment is oxymoronic. False imprisonment is, by definition, an unreasonable and indeed criminal confinement. (*Collyer* v. *S.H. Kress & Co., supra,* 5 Cal.2d at pp. 180-181.) It is the close cousin of assault, which was, as discussed above, considered beyond the compensation bargain by most California courts even before its exceptional status was legislatively recognized in section 3602, subdivision (b)(1). (See 1 Harper et al., Law of Torts (2d ed. 1986) § 3.9, p. 296 [the law of false imprisonment protects "interests in personality closely akin to those protected by the law of assault and battery"].) When an employer forcibly and criminally deprives an employee of her liberty, even as a means to otherwise legitimate ends, it steps outside

its "proper role," whether it uses assault and battery to enforce that false imprisonment, or employs some other coercive stratagem.[6]

Unlike the tort of intentional infliction of emotional distress considered in *Cole*, the tort of false imprisonment involves *criminal conduct* against the employee's person, not permissible conduct that only becomes intentionally tortious in light of the employer's supposed malicious state of mind. Thus, permitting an employee's civil action for false imprisonment presents none of the dangers recognized in *Cole* and *Johns-Manville* that allowance of such exceptions would undermine the exclusivity provisions of the workers' compensation system. ▉▉▉ ▬ ▉▉ ▉▉ Rather, in order to plead false imprisonment in a civil action, a plaintiff/employee would have to allege

---

[6]It is noteworthy that a large majority of jurisdictions that have considered the matter have concluded that false imprisonment is not barred by workers' compensation, for various reasons. Some cases conclude that false imprisonment, like slander, is not an industrial "injury" within the meaning of that state's workers' compensation act. As one court has stated: "The Act has been interpreted to encompass physical and mental injuries which arise out of and in the course of one's employment. However, the gist of an action for false imprisonment is unlawful detention irrespective of any physical or mental harm. [Citations.] We do not feel, therefore, that the plaintiff has suffered the type of personal injury covered under the Act." (*Moore* v. *Federal Department Stores, Inc.* (1971) 33 Mich.App. 556 [190 N.W.2d 262, 264, 46 A.L.R.3d 1275], fns. omitted; see also *Columbia Sussex Corp., Inc.* v. *Hay* (Ky.Ct.App. 1981) 627 S.W.2d 270, 279; *Redican* v. *K Mart Corp.* (Mo.Ct.App. 1987) 734 S.W.2d 864, 869; *Mason* v. *District of Columbia* (App.D.C. 1978) 395 A.2d 399, 403-404.)

Other courts have relied more on the wording of their statute that workers' compensation covers only "accidental injury," in reaching the conclusion that false imprisonment is categorically barred from workers' compensation. (*Miller* v. *McRae's, Inc.* (Miss. 1984) 444 So.2d 368, 370-372; *Schutt* v. *Lado* (1984) 138 Mich.App. 433 [360 N.W.2d 214]; *Hamilton* v. *East Ohio Gas Company* (1973) 47 Ohio App.2d 55 [351 N.E.2d 775]; *Morris* v. *United Parcel Service* (1987) 134 A.D.2d 840 [521 N.Y.S.2d 591, 592]; *Skelton* v. *W.T. Grant Company* (5th Cir. 1964) 331 F.2d 593; *Smith* v. *Rich's, Inc.* (1961) 104 Ga.App. 883 [123 S.E.2d 316].)

Of all the jurisdictions to consider the matter, only the United States has considered false imprisonment to be barred by workers' compensation. (See *Dunn* v. *United States* (E.D.Pa. 1981) 516 F.Supp. 1373, 1374.) However, the Department of Labor, the agency that determines the scope of workers' compensation remedies, has apparently reversed its position recently, permitting civil actions for false imprisonment in at least some instances (see *Quevedo* v. *Postmaster, U.S. Postal Service* (S.D.N.Y. 1989) 708 F.Supp. 59, 62, vacated 774 F.Supp. 837, 839).

As discussed above, California law does not universally exclude intentional torts from the workers' compensation system, and this state's act contains no language that the injuries compensated under the act must be "accidental." Moreover, although it may be the case that false imprisonment is not an "injury" cognizable under the act, we have held that the mere fact that an injury is noncompensable under the act does not mean that the injury is remedial by civil action. (*Livitsanos* v. *Superior Court, supra*, 2 Cal.4th 744, 755.) But although none of the cases cited above are directly on point, it is nonetheless instructive that virtually all the jurisdictions to consider the matter have concluded that a false imprisonment action was not barred by the workers' compensation exclusivity rule.

rather specific, and fairly uncommon, acts of involuntary and criminal confinement.[7]

It is true that whether a false imprisonment did indeed take place in this case is a closer question than that posed in the *Meyer, Iverson,* or *Moffat* cases cited above. The justification here for the confinement was arguably more substantial than in the former two cases, and the duration of the confinement was considerably shorter than in the third. We do not deny the right of an employer to reasonably detain an employee suspected of theft, and indeed to discharge an employee—consistent with the employee's contractual or other employment rights—if he or she refuses to cooperate with a reasonable investigation. ▮ But the question whether Fedco's actions were reasonable, justifiable, or privileged goes to the factual question *whether* its actions constituted false imprisonment—a question we cannot and do not resolve on the pleadings.[8] ▮ Once it is determined, however, that a false imprisonment has indeed taken place, then such action cannot be said to be a normal aspect of the employment relationship, however legitimate its initial justification, any more than an assault on an employee can be brought within the scope of the exclusivity rule by claiming it was motivated by the need for employee discipline. (See *Miller* v. *Reed* (1986) 27 Ohio.App.3d 70 [499 N.E.2d 919, 922] [civil action permitted when supervisor "with force and violence, act[s] to discipline the plaintiff for disobedience of his directions"].) We conclude therefore that false imprisonment committed by an employer against an employee is always outside the scope of the compensation bargain.

---

[7] In stating that false imprisonment is outside the scope of the compensation bargain because it constitutes a crime against the person of the employee, we do not mean to suggest that regulatory crimes such as violations of health and safety standards or special orders are actions outside the normal course of employment. On the contrary, the Act includes such regulatory crimes within its scope. (See §§ 6423, 4553.1; see also *Johns-Manville, supra,* 27 Cal.3d at pp. 474-475 [workers' compensation the only remedy for injuries resulting from willful failure to comply with government regulations regarding dust levels].) It is an expected part of the compensation bargain that industrial injury will result from an employer's violation of health and safety, environmental and similar regulations. What we hold today, rather, is that those classes of intentional employer crimes against the employee's person by means of violence and coercion, such as those crimes numerated in part 1, title 8 of the Penal Code, violate the employee's reasonable expectations and transgress the limits of the compensation bargain.

[8] We note that the merchant's privilege is a defense to a false imprisonment action (see *Collyer* v. *S.H. Kress & Co., supra,* 5 Cal.2d at p. 180). As such, the lack of that privilege on defendant's part need not be specifically pleaded by plaintiff. (See *Parrot* v. *Bank of America, supra,* 97 Cal.App.2d 14, 21-22.) Although a false imprisonment must involve an "unlawful" restraint on an individual's liberty (Pen. Code, § 236), Fermino's allegations sufficiently plead that her confinement was unlawful. Moreover, the question of whether a detainment was reasonable is generally a question of fact. (See, e.g., *Alterauge* v. *Los Angeles Turf Club, supra,* 97 Cal.App.2d 735, 738-739.)

Turning to the present case, we conclude that plaintiff has stated a cause of action for false imprisonment. Like the plaintiff in *Parrott* v. *Bank of America, supra,* 97 Cal.App.2d at page 22, plaintiff here has pleaded that she was held against her will by her employer for an appreciable time under threat of force and threat of arrest for an apparently ill-founded reason. As such, her cause of action for false imprisonment cannot be defeated on demurrer by raising the claim that it is barred by sections 3600 and 3602.

### III. DISPOSITION

The judgment of the Court of Appeal is reversed.

Lucas, C. J., Kennard, J., Arabian, J., Baxter, J., George, J., and Klein, J.,* concurred.

---

*Presiding Justice, Court of Appeal, Second District, Division Three, assigned by the Acting Chairperson of the Judicial Council.