Filed 8/23/22  P. v. Cordova CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D079487 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCS316612) |
| MICHAEL ANGEL CORDOVA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Enrique Camarena, Judge.  Affirmed.

Robert L. Hernandez, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Melissa Mandel, and Britton B. Lacy, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Michael Angel Cordova of second degree robbery (Pen. Code,[1] § 211) and found true a special allegation that Cordova personally used a dangerous and deadly weapon (§ 12022, subd. (b)(1)). Cordova also admitted a prior serious felony (§§ 667, subd. (a)(1), 1192.7, subd. (c), 668) and a prior strike (§§ 667, subds. (b)-(i), 1170.12, 668). At sentencing, the court struck the prior serious felony and stayed the deadly weapon enhancement. The court sentenced Cordova to prison for the lower term of two years for the robbery, doubled for the prior strike, for a term of four years. In addition, the court sentenced Cordova for an additional eight months for a separate charge under section 4573.8, which is not at issue in this case. Thus, Cordova was sentenced to a total of four years and eight months.

Cordova argues that the trial court erred by instructing the jury on shopkeeper's privilege because it lessened the People's burden of proof at trial. We conclude that even if the trial court erred in providing that instruction, Cordova has not shown that he was prejudiced by such error. As such, we affirm the judgment.

I.

FACTUAL AND PROCEDURAL BACKGROUND

In January 2021, Cordova entered a Home Depot store. T.F., a Home Depot asset protection specialist, observed Cordova walk down an aisle, look around to see who was watching him, select an item off the shelf, and conceal it inside his jacket. Cordova walked towards an exit and T.F. followed him. T.F. signaled a manager-on-duty, F.K., to follow him as Cordova exited the store. Cordova did not pay for the item.

---

[1] All further statutory references are to the Penal Code.

2

Cordova exited the store, and T.F. and F.K. approached him outside. T.F. identified himself as Home Depot loss prevention and stated, "I need my merchandise back." T.F. told him he would be free to leave if he returned to the store and signed some papers. Cordova refused to reenter the store. He said he did not have anything from Home Depot and asked T.F. to leave him alone.

T.F. testified that during the interaction with Cordova, T.F. "was kind of playing tag" with him. At some point, Cordova handed T.F. a stolen product but not the product T.F. witnessed him take. T.F. told Cordova that if he returned the product T.F. witnessed him take, "we will call it even," and "[y]ou can leave."

T.F. continued to ask Cordova for the product and stated, "It's right here under your armpit." During the back and forth over the product, T.F. testified that he grabbed Cordova's glasses that were falling off his face.[2]

As T.F. reached for the product, Cordova moved away, pulled out a knife, and stated, "Step back or I'll stab you." Once Cordova pulled out the knife, T.F., F.K., and a third witness observing the incident stepped back. F.K. then called 9-1-1.

Cordova left the front of the store, picked up a backpack he left at the corner of the store, and ran toward a ravine near the store. He later emerged from the ravine when police arrived on the scene.

A responding officer found the knife on Cordova's person. The responding officer also noticed a red mark on Cordova's face when later reviewing the body-worn video camera footage from the day of the incident.

---

[2]  F.K. testified that he did not witness T.F. hit Cordova during the incident. F.K. further testified that according to the store's policy, the store would terminate a loss prevention officer who hit a customer or shoplifter.

3

After police detained Cordova, T.F. identified a flashlight that Cordova left in the ravine as the product he witnessed Cordova conceal under his jacket in the store.

The People filed a felony complaint charging Cordova with one count of robbery (§ 211) with a special allegation that he personally used a deadly and dangerous weapon (§ 12022, subd. (b)(1)). The People further alleged a prior serious felony (§§ 667, subd. (a)(1), 1192.7, subd. (c), 668) and a prior strike (§§ 667, subds. (b)-(i), 1170.12, 668).

Cordova pled not guilty. He also admitted the prior serious felony and the prior strike.

Prior to closing arguments, the People specially requested a jury instruction on shopkeeper's privilege. Despite defense counsel's objection, the court granted the request but modified the instruction to define "merchant." It instructed the jury by quoting the following from section 490.5, subdivisions (f)(1), (2), and (g)(2):

> "A merchant may detain a person for a reasonable time for the purpose of conducting an investigation in a reasonable manner whenever the merchant has probable cause to believe the person to be detained is attempting to unlawfully take or has unlawfully taken merchandise from the merchant's premises.
>
> "In making a detention a merchant may use a reasonable amount of nondeadly force necessary to protect himself or herself and to prevent escape of the person detained or the loss of tangible or intangible property.
>
> " 'Merchant' means an owner or operator, and the agent, consignee, employee, lessee, or officer of an owner or operator, of any premises used for the retail purchase or sale of any personal property capable of manual delivery."

4

Defense counsel also specially requested a self-defense instruction. The court denied the request because "self-defense is generally not a recognized defense to a robbery charge."

Prior to closing arguments, the court recited the jury instructions. The court included instructions on reasonable doubt according to CALCRIM No. 220, the elements of robbery according to CALCRIM No. 1600, and intent from circumstantial evidence according to CALCRIM No. 225.

During closing argument, defense counsel emphasized that "Each and element needs to be met beyond a reasonable doubt." (*Sic*.) Counsel also reminded the jurors that if they reasonably concluded that Cordova's intent when he displayed the knife was "simply to get away," then "the required mental state was not proved," and "you have to find him not guilty."

The jury found Cordova guilty of second degree robbery (§ 211) and found true that he personally used a deadly and dangerous weapon (§ 12022, subd. (b)(1)).

Cordova filed a timely notice of appeal.

## II.

## DISCUSSION

Cordova contends that the jury instruction on shopkeeper's privilege undermined his defense theory at trial and thereby lessened the People's burden of proof. At trial, Cordova argued that he used force to defend himself from the store employees and did not use force to maintain possession of the stolen items. On appeal, he asserts that the subject instruction "invited the jury to conclude that the store employees were acting according to the law, and that any resistance by [Cordova], therefore, must have been improper and contrary to the law." Therefore, the instruction impermissibly placed "the burden on [Cordova] to prove that he was not acting unlawfully."

5

## A. Standard of Review

We review purported instructional error de novo. (*People v. Rivera* (2019) 7 Cal.5th 306, 326.) "[W]e view the challenged instruction in the context of the instructions as a whole and the trial record to determine whether there is a reasonable likelihood the jury applied the instruction in an impermissible manner." (*People v. Houston* (2012) 54 Cal.4th 1186, 1229.) The court examines jury instructions as a whole and " ' "not from a consideration of parts of an instruction or from a particular instruction." ' " (*People v. Covarrubias* (2016) 1 Cal.5th 838, 905 (*Covarrubias*), quoting *People v. Solomon* (2010) 49 Cal.4th 792, 822.)

Additionally, when reviewing jury instructions for error, " 'It is fundamental that jurors are presumed to be intelligent and capable of understanding and applying the court's instructions.' " (*Covarrubias*, *supra*, 1 Cal.5th at p. 926, quoting *People v. Gonzales* (2011) 51 Cal.4th 894, 940.) " 'If reasonably possible, instructions are interpreted to support the judgment rather than defeat it.' " (*People v. Powell* (2021) 63 Cal.App.5th 689, 710, quoting *People v. McPheeters* (2013) 218 Cal.App.4th 124, 132.) In addition to the instructions themselves, "The reviewing court also must consider the arguments of counsel in assessing the probable impact of the instruction on the jury." (*People v. Young* (2005) 34 Cal.4th 1149, 1202.) Thus, "An erroneous instruction requires reversal only when it appears that the error was likely to have misled the jury." (*People v. Tatman* (1993) 20 Cal.App.4th 1, 10.)

## B. Adequacy of Instructions

In criminal cases, a trial court must instruct the jury on the law that applies to the issues raised in the case. (*People v. Rangel* (2016) 62 Cal.4th 1192, 1223.) However, "A technically correct instruction will nevertheless be

considered erroneous if in light of other instructions it could cause a reasonable jury to believe that it was required to find against the defendant on an essential element of the offense [citation], that the burden had shifted to the defendant with respect to an essential element of the offense [citation], or that its consideration of all of the evidence with respect to an essential element of the offense was restricted [citation]." (*People v. Frye* (1992) 7 Cal.App.4th 1148, 1160.)  For example, a jury instruction may be impermissibly argumentative when "it would invite the jury to draw inferences favorable to [one party] from specified items of evidence on a disputed question of fact." (*People v. Wright* (1988) 45 Cal.3d 1126, 1135.) Additionally, a trial court should not permit instructions that might confuse the jury. (*People v. Peoples* (2016) 62 Cal.4th 718, 768.)

## C.  Shopkeeper's Privilege

Shopkeeper's privilege is a common law privilege intended to protect merchants from claims of false imprisonment by providing an affirmative defense against liability. (*Fermino v. Fedco, Inc.* (1994) 7 Cal.4th 701, 716, 723, fn. 8 (*Fermino*).)  The California Legislature codified this privilege in section 490.5: "A merchant may detain a person for a reasonable time for the purpose of conducting an investigation in a reasonable manner whenever the merchant has probable cause to believe the person to be detained is attempting to unlawfully take or has unlawfully taken merchandise from the merchant's premises." (*Id.*, subd. (f)(1).)  It further provides that "In making the detention a merchant, . . . may use a reasonable amount of nondeadly force necessary to protect himself or herself and to prevent escape of the person detained or the loss of tangible or intangible property." (*Id.*, subd. (f)(2).)  The statute defines "merchant" as "an owner or operator, and

7

the agent, consignee, employee, lessee, or officer of an owner or operator, of any premises used for the retail purchase or sale of any personal property capable of manual delivery." (*Id.*, subd. (g)(2).)

### D. Analysis

The trial court instructed the jury on shopkeeper's privilege according to section 490.5, subdivisions (f)(1), (2), and (g)(2). Cordova concedes that this instruction reflected an accurate statement of the law but argues that it implied a presumption that the store employees acted lawfully, and Cordova did not.

We acknowledge that an instruction on shopkeeper's privilege is typically given as a defense for a merchant charged with false imprisonment. (*Fermino, supra*, 7 Cal.4th at p. 723, fn. 8.) While this instruction provided an accurate legal standard, we do not see the need for a shopkeeper's privilege instruction here in the context of a robbery case where a merchant was not charged with false imprisonment. However, even assuming the court erred in providing this instruction, such error was harmless.

We review an instructional error that does not implicate the appealing party's constitutional rights under a harmless error standard according to *People v. Watson* (1956) 46 Cal.2d. 818.[3] (*People v. Lamer* (2003) 110 Cal.App.4th 1463, 1471.) Under such standard, reversal is required only when "it is reasonably probable that a result more favorable to the appealing

---

[3] Cordova argues that a finding of instructional error in this case should be reviewed under a harmless beyond a reasonable doubt standard according to *Chapman v. California* (1967) 386 U.S. 18. The *Chapman* standard is not applicable here because, as discussed, the instruction did not impermissibly lessen the People's burden of proof. Thus, any error did not implicate Cordova's constitutional rights such that we must review the instruction under *Chapman*.

party would have been reached in the absence of the error." (*Watson*, at p. 836.) In determining whether an instructional error was harmless under *Watson*, we consider " 'the specific language challenged, the instructions as a whole[,] the jury's findings' [citation], and counsel's closing arguments to determine whether the instructional error 'would have misled a reasonable jury . . . ' [citation]." (*People v. Eid* (2010) 187 Cal.App.4th 859, 883 (*Eid*), quoting *People v. Cain* (1995) 10 Cal.4th 1, 35-36, 37.)

Considering the sufficiency of the jury instructions as a whole, we do not find that this single instruction lessoned the People's burden such that it prejudiced Cordova when other instructions clearly and repeatedly explained the People's burden of proof. For example, the court instructed the jury on the elements of robbery according to CALCRIM No. 1600. Additionally, the court instructed the jury on reasonable doubt according to CALCRIM No. 220 and on intent from circumstantial evidence according to CALCRIM No. 225.

Importantly, CALCRIM No. 1600 notes the following: "The defendant's intent to take the property must have been formed before or during the time he used force or fear. If the defendant did not form this required intent until after using the force or fear, then he did not commit robbery." CALCRIM No. 225 further clarifies intent: "The People must prove not only that the defendant did the acts charged, but also that he acted with a particular intent or mental state." It also requires the jury to "be convinced that the People have proved each fact essential to [finding the defendant guilty] beyond a reasonable doubt" before relying on circumstantial evidence to make a conclusion about Cordova's intent. Thus, the jury received sufficient instructions about the intent required to convict Cordova and about the People's burden to prove his intent beyond a reasonable doubt.

9

In addition to these instructions, during closing argument, defense counsel consistently and repeatedly emphasized the importance of reasonable doubt and the intent required to find Cordova guilty. Counsel highlighted that "Each and element needs to be met beyond a reasonable doubt." (*Sic*.) Counsel also advised the jurors that if they found Cordova's self-defense theory reasonable, then "the required mental state was not proved," and "you have to find him not guilty." Under a harmless error review, we consider how these arguments affect an instructional error. (*Eid*, *supra*, 187 Cal.App.4th at p. 883.) Consequently, these arguments, which emphasized the high burden the People faced, further show that the shopkeeper's privilege instruction did not mislead the jury to place the burden of proof on the defendant or otherwise lessen the People's burden of proof.

Furthermore, at no point did the jury ask for clarification about the instructions on shopkeeper's privilege, the elements of robbery, the requisite intent, or reasonable doubt.[4] Accordingly, the record does not suggest that the instruction "likely confused the jury about how to address the questions set before it," as asserted by Cordova.

Assuming the jurors are capable of understanding all of its instructions as required by *Covarrubias*, we find nothing in the record to support Cordova's contention that the shopkeeper's privilege instruction compelled the jurors to assume the store employees were acting lawfully and presume Cordova was not. (*Covarrubias*, *supra*, 1 Cal.5th at p. 926.) Simply put, Cordova has not demonstrated how such instruction resulted in a prejudicial error, and we therefore affirm the judgment.

---

[4]     During jury deliberations, the court received one note from the jury concerning a technical issue with one of the exhibits.

## DISPOSITION

The judgment is affirmed.


HUFFMAN, Acting P. J.

WE CONCUR:



O'ROURKE, J.



DATO, J.

11