Filed 12/16/13  P. v. Gossett CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B233971 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. SA069101) |
| v. | |
| DION LAMONT GOSSETT, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Cynthia Rayvis, Judge.  Affirmed as modified.

Jessica Coffin Butterick, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Linda C. Johnson, and Michael Katz, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Dion Lamont Gossett was convicted by a jury of felony false imprisonment and misdemeanor sexual battery. The jury also found true special allegations he had suffered a prior serious or violent felony conviction within the meaning of the three strikes law (making a criminal threat) and served three prior separate prison terms for felonies within the meaning of Penal Code section 667.5, subdivision (b).[1] On appeal Gossett challenges the court's exclusion of relevant impeachment evidence, contends the evidence was insufficient to support his conviction for felony false imprisonment and argues his right to due process was violated by the failure to preserve surveillance footage taken the day of the offense. Gossett also contends use of his prior conviction for making a criminal threat under the three strikes law violated his plea agreement in the prior case and his sentence on the misdemeanor conviction for sexual battery should have been stayed under section 654. We modify the sentence to comport with section 654 and, as modified, affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Information*

An amended information charged Gossett with felony false imprisonment by violence, menace or fraud (§ 236) and misdemeanor sexual battery (§ 243.4, subd. (e)(1)). It specially alleged as to both offenses Gossett had suffered four prior separate prison terms for felonies within the meaning of section 667.5, subdivision (b), and two prior convictions for serious or violent felonies within the meaning of the three strikes law (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)). Gossett pleaded not guilty and denied the special allegations.

2. *The Evidence at Trial*

On August 16, 2008 Gossett approached Iris Z. in the hallway next to the cafeteria of Saint John's Health Center, where she worked as a cafeteria cashier. Gossett told Iris she was "very pretty" and asked whether she was married. Iris replied the cafeteria did not open until 11:00 a.m. and continued walking toward the cafeteria. When she arrived

---

[1] Statutory references are to the Penal Code unless otherwise indicated.

at her cash register, she noticed Gossett hiding behind an adjacent wall. Frightened and otherwise alone in the public area of the cafeteria, she tried to flee through the employee door; but Gossett followed her and pushed her behind the soda machines. He grabbed her from behind and squeezed her chest "with all of his strength," making it difficult for her to breathe. He made a noise like he was sexually excited. He kissed and licked Iris's neck and touched the top of her shirt and her breasts. Iris could not move. After several minutes during which Iris struggled to get free, Gossett let her go. Iris reported the incident that morning to security guards at the hospital, telling them a man in the cafeteria had "attacked her"; but, according to Iris, they did not immediately respond to her complaint. Iris saw Gossett in the cafeteria twice more after the attack and each time left to report him to security guards. Iris reported the incident to police on August 20, 2008. She explained she waited four days to report the incident to law enforcement because she had thought hospital security would make the report.[2]

Jeffrey Marshall, one of the security guards on duty at the time of the incident, confirmed Iris had reported to him the morning of August 16, 2008 that a stranger inside the cafeteria had tried to "grab her, attack her"; she did not specifically mention that Gossett had, in fact, grabbed, kissed or licked her. Phillip Duncan, another security guard on duty, testified Iris had also reported to him that a strange man in the cafeteria had scared her; she did not mention she had been assaulted. Duncan acknowledged, however, that by later that morning, he had learned Iris had been "assaulted or attacked" and still did not call police. Instead, he confronted Gossett, a Saint John's patient, in his hospital room. Gossett denied grabbing or fondling Iris. When Gossett was discharged from the hospital later that day, security guards escorted him off hospital property.

Kevin Litzenberger, a security supervisor responsible for the operation of the hospital's digital surveillance camera system, testified he reviewed and downloaded for

---

[2] Santa Monica Police Officer Chris Skogh testified Iris had told him she delayed reporting the incident to law enforcement because she was frightened of Gossett and too distraught to talk about it. Iris explained to Skogh her husband had finally convinced her to report the incident to the police.

police footage from two surveillance cameras, one adjacent to, and the other inside, the cafeteria. Still images from the surveillance cameras, admitted into evidence, showed: Gossett in the cafeteria at 10:44 a.m. the day of the attack; Gossett standing against the wall when Iris came around the corner to approach her cash register; Gossett approaching Iris, and Iris moving away from him; and Gossett following Iris around the corner. Litzenberger also authenticated other footage from a different surveillance camera showing Iris walking toward the security desk at 10:47 a.m. that morning and Gossett leaving the cafeteria at 10:48 a.m., although there was testimony the time stamps on the photographs might not be accurate because the clocks on each of the cameras were not synchronized. Litzenberger spoke to Iris after the incident as part of an internal investigation. He could not remember Iris's exact words, but recalled Iris made very clear to him Gossett had grabbed her around her chest and the attack had taken place near the fountain drinks, behind a cafeteria wall. Litzenberger testified no surveillance cameras were installed at that location.

Iris's husband, Javier L., testified Iris had acted very strangely when she arrived home from work the day of her encounter with Gossett. Rather than greeting him, she went into the bathroom and took a shower. Javier L. heard her crying and pleaded with her to tell him what happened. Iris told him a man had attacked her inside the cafeteria.

Gossett testified in his own defense. He explained he had been admitted to the hospital in the early morning of August 16, 2008 for chest pains. He left his hospital room that morning dressed in surgical scrubs the hospital had given him and went to the cafeteria to eat because hospital staff had refused his requests for more food. Gossett suffered from adult-onset diabetes and believed he needed to eat immediately to avoid a worsening of his condition. When he arrived at the cafeteria, Iris confronted him and told him the cafeteria was closed. Gossett left the cafeteria to see if he could find something to eat in the gift shop. Because the gift shop was also closed, he returned to the cafeteria, hoping to sneak in and grab something to eat. As he crept along the wall, he was spotted by Iris. Gossett turned around and left, intending to wait five or 10 minutes until the cafeteria opened for business. At 11:00 a.m. he returned to the cafeteria to buy

4

something to eat.  However, he received a call on his cell phone and left the cafeteria to talk in the hallway.  Chandra Brambles Walker, a hospital administrator, and another man, a security guard, admonished Gossett for being in the cafeteria rather than in his hospital room and took him back to his room.  He remained in his room until he was discharged later that day and escorted by hospital security off the premises.  Gossett denied touching Iris at all, much less grabbing her, holding her, kissing or licking her neck.  He acknowledged several prior convictions for receiving stolen property, assault by force likely to produce great bodily injury, assault with a firearm, grand theft, spousal or roommate abuse and making criminal threats.

Walker testified she had seen Gossett hovering near the cafeteria and talking on his cell phone and thought he appeared out of place.  Realizing he was a patient, she, along with a hospital security guard, escorted him back to his room.

3. *The Verdict and Sentence*

The jury found Gossett guilty of both felony false imprisonment and misdemeanor sexual battery.  In a bifurcated proceeding on the special allegations, the jury found Gossett had suffered one prior strike conviction within the meaning of the three strikes law for making a criminal threat and had served four prior separate prison sentences for felonies within the meaning of section 667.5, subdivision (b).[3]  Gossett moved to dismiss the prior strike conviction for making a criminal threat.  He argued the offense was not a strike in 1999 when he pleaded no contest to that offense, he had specifically entered into a plea agreement concerning that offense because it was not a strike, and it violated his plea agreement to use the offense as a qualifying strike now.  He also urged the court to

_____

[3]　For reasons not apparent in the record, in the bifurcated proceeding on Gossett's prior convictions the People presented evidence of only one prior qualifying strike conviction—the 1999 conviction under section 422—and did not offer any evidence as to the 1987 assault-with-a-firearm offense that had also been alleged as a strike in the amended information.  As to the prior convictions alleged under section 667.5, subdivision (b), it was later determined that Gossett had served two of his four prior prison sentences for felonies concurrently; accordingly, as the trial court recognized at sentencing, only three of those prison sentences qualified to enhance his current sentence under section 667.5, subdivision (b).

5

dismiss the prior strike under section 1385 in furtherance of justice. The court denied both requests and sentenced Gossett to an aggregate state prison term of nine years: the high term of three years for felony false imprisonment, doubled under the three strikes law, plus three years for the section 667.5, subdivision (b), enhancements and a concurrent six-month sentence for the misdemeanor sexual battery conviction.

## DISCUSSION

1. *The Trial Court Did Not Commit Prejudicial Error in Excluding Evidence Iris Had Filed a Workers' Compensation Claim*

Prior to trial the People moved to exclude any mention of the workers' compensation claim Iris had filed for emotional injuries sustained as a result of her encounter with Gossett. Gossett argued evidence of the claim was relevant to impeach Iris's credibility by showing she had a financial incentive to invent or exaggerate the allegations against him. The court ruled, to the extent the workers' compensation claim contained statements inconsistent with statements Iris made at trial, Gossett could use those statements to impeach Iris's credibility. However, absent evidence of inconsistent statements or evidence Iris believed she had to file a police report before submitting a workers' compensation claim in connection with the incident, the court concluded the fact she had filed a workers' compensation claim was not relevant.

Portraying the case against him as a he-said-she-said matter that depended on Iris's credibility, Gossett contends the court erred in excluding the evidence of Iris's workers' compensation claim.[4] Gossett distinguishes *People v. Ayala* (2000) 23 Cal.4th 225 and *People v. Hartsch* (2010) 49 Cal.4th 472, both of which upheld the exclusion of impeachment evidence on the ground the evidence was cumulative. Unlike those cases, he insists, the only evidence available to attack Iris's credibility was the fact of the

---

[4]     Gossett emphasizes what he terms as Iris's ambiguous testimony at the Evidence Code section 402 hearing to show that Iris believed she had to file a police report to obtain workers' compensation benefits. When asked, "Do you know what procedure you needed to take [to file a workers' compensation claim,]" Iris replied, "I made a police report." However, asked whether anyone told her she had to make such a report to file a workers' compensation claim, she replied, "No. I did it because I had to do it for my own safety."

workers' compensation claim, making its exclusion not only erroneous, but also highly prejudicial.

We agree the court's exclusion of this evidence as lacking any probative value was error. (See *People v. Brown* (2003) 31 Cal.4th 518, 577 ["[a]lthough we review relevance determinations under a deferential standard of review [citation], we find the trial court abused its discretion . . ."].)[5] The filing of the workers' compensation claim did have some tendency in reason to undermine Iris's credibility by providing a motive for her to exaggerate her encounter with Gossett. (See Evid. Code, §§ 210 ["'[r]elevant evidence' means evidence, including evidence relevant to the credibility of a witness . . . having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action"]; 780, subd. (f) [evidence that has any tendency in reason to prove or disprove truthfulness of witness's testimony, including evidence relating to existence or nonexistence of bias, interest, or motive is admissible]; *Calvert v. State Bar* (1991) 54 Cal.3d 765, 777 ["[g]enerally, any fact or circumstance tending to show that a witness has a financial interest in the outcome of a legal proceeding is a proper ground for impeachment"].) Nonetheless, absent any statements in the claim that were inconsistent with Iris's other accounts of the incident, the impeachment value of having filed a claim was minimal. Indeed, it is as likely the evidence such a claim had been filed would have reinforced her testimony rather than weakened her credibility, as the allegations in her workers' compensation claim were apparently fully consistent with the events she reported the day of the incident. Under these circumstances, whatever marginal relevance the excluded evidence may have had, it is not reasonably probable Gossett would have received a more favorable verdict had it been admitted. (See *People v. Partida* (2005) 37 Cal.4th 428, 439 ["[S]tate law error in admitting evidence is subject to the traditional *Watson* test: The reviewing court must

---

[5]     Although the People assert the evidence was properly excluded under Evidence Code section 352 as unduly prejudicial or confusing, no objection was made on that ground; and the record does not reflect the court weighed the probative value of the evidence against some other factor.

ask whether it is reasonably probable the verdict would have been more favorable to the defendant absent the error"].)

Gossett asserts the court's ruling violated his constitutional right to confront and cross-examine Iris on evidence critical to her credibility, thus requiring the error be evaluated under the more rigorous *Chapman,* beyond-a reasonable-doubt standard of review. (See *Delaware v. Van Arsdall* (1986) 475 U.S. 673, 679 [106 S.Ct. 1431, 1435, 89 L.Ed.2d 674] [if improper restriction of cross-examination violates the Confrontation Clause, the test is whether the error is harmless beyond a reasonable doubt]; *People v. Dyer* (1988) 45 Cal.3d 26, 47 [same].) Contrary to Gossett's contention, the exclusion of limited impeachment evidence does not infringe a defendant's Sixth Amendment right to confront and cross-examine witnesses. (See *People v. Brown, supra,* 31 Cal.4th at p. 545 [trial court's exclusion of evidence of "marginal impeachment value" generally does not contravene a defendant's constitutional right to confrontation and cross-examination].) As we have explained, the bare fact of the workers' compensation claim would not have significantly undermined Iris's credibility. (See *id.* at pp. 545-546 ["'[u]nless the defendant can show that the prohibited cross-examination would have produced "a significantly different impression of [the witnesses'] credibility,"'" the exclusion of evidence does not rise to a constitutional violation].)

    2. *Substantial Evidence Supports the Jury's Finding of Felony False Imprisonment*

"False imprisonment is the unlawful violation of the personal liberty of another." (§ 236.) It occurs when the defendant intentionally restrains, confines or detains another person without his or her consent for "'"'an appreciable length of time, however short."'"' (*Fermino v. Fedco, Inc.* (1994) 7 Cal.4th 701, 715; see *ibid.* ["The crime of false imprisonment is defined by [§] 236 as the 'unlawful violation of the personal liberty of another.' The tort is identically defined."].) When the restraint on the victim's personal liberty is accomplished by violence, menace, fraud or deceit, it is a felony. (§ 237, subd. (a).) In the case of felony false imprisonment by violence, the force used to accomplish the restraint must be something greater "than that reasonably necessary to

8

effect the restraint." (*People v. Dominguez* (2010) 180 Cal.App.4th 1351, 1357 [""""Misdemeanor false imprisonment becomes a felony only where the force used is greater than that reasonably necessary to effect the restraint. In such circumstances the force is defined as 'violence' with the false imprisonment effected by such violence a felony.""""]; *People v. Castro* (2006) 138 Cal.App.4th 137, 140 [same].)

Gossett contends the evidence was insufficient to show he used any more force than was necessary to restrain Iris's movement.[6] Accordingly, he argues, at most the evidence supports a conviction for misdemeanor false imprisonment. However, Gossett did more than simply grab Iris. There is substantial evidence Gossett pushed Iris behind a wall and squeezed her "with all of his strength" not only restraining her liberty, but also preventing her from breathing easily or calling out for help. (Cf. *People v. Castro, supra,* 138 Cal.App.4th at p. 143 ["In the present case, appellant grabbed the victim and turned her around. If that is all that had happened, we would agree with appellant that his conduct amounted only to misdemeanor false imprisonment. But appellant pulled her toward his car, an act more than what was required to stop her and keep her where she was located."].)

---

[6] When considering challenges to the sufficiency of the evidence, we "review the whole record to determine whether *any* rational trier of fact could have found the essential elements of the crime or special circumstances beyond a reasonable doubt. [Citation.] The record must disclose substantial evidence to support the verdict—i.e., evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] In applying this test, we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence. [Citation.] 'Conflicts and even testimony [that] is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.] We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence. [Citation.]' [Citation.] A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support"' the jury's verdict." (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.)

Gossett's reliance on our decision in *People v. Matian* (1995) 35 Cal.App.4th 480, 485 is misplaced. In *Matian* the defendant told the victim whom he had just sexually assaulted to remain in the room and glared at her each time she attempted to leave. The People conceded there was no evidence the defendant had used violence to restrain the victim's liberty. On that record we held there was insufficient evidence of menace—an express or implied threat of harm (see *People v. Raley* (1992) 2 Cal.4th 870, 908)—to support the defendant's conviction for felony false imprisonment. (*Matian,* at pp. 486-487.)[7] We need not revisit our holding in *Matian* or address the evidence necessary to support a conviction for false imprisonment by menace. Here, as explained, there was sufficient evidence of violence—force beyond that necessary to restrain Iris's liberty—to support the conviction for felony false imprisonment.

Finally, Gossett contends surveillance footage and other evidence concerning the amount of missing footage makes clear that Iris's testimony of a seven-minute-long confinement was incredible, and the restraint could not have lasted for more than two minutes. However, even two minutes of unlawful confinement can be a sufficiently "appreciable length of time" for a false imprisonment. (See *Fermino v. Fedco, Inc., supra,* 7 Cal.4th at p. 715 [false imprisonment consists of nonconsensual confinement of a person without lawful privilege for """"an appreciable length of time, however short"""""]; [same].) As for the felonious nature of the offense, it is not the duration of the confinement that elevated the crime to a felony, but the violence with which the restraint was accomplished. (See *People v. Dominguez, supra,* 180 Cal.App.4th at p. 1357.)[8]

---

[7]     *Matian* has been criticized by several courts. (See *People v. Castro, supra,* 138 Cal.App.4th at p. 143; *People v. Aispuro* (2007) 157 Cal.App.4th 1509, 1513; *People v. Wardell* (2008) 162 Cal.App.4th 1484, 1491; *People v. Islas* (2012) 210 Cal.App.4th 116, 125-126.)

[8]     To the extent Gossett suggests the prosecutor relied solely on the duration of the confinement to prove its felonious nature and not the force used, the record belies this contention. In response to Gossett's section 1118.1 motion for acquittal on the charge of felony false imprisonment, the prosecutor argued force "reasonably necessary to restrain someone is putting your arm in front of someone" to prevent the person from leaving. "Grabbing someone and holding them such that they can't breathe is beyond

10

3.  *Gossett Forfeited His Due Process Challenge Concerning the Failure To Produce Exculpatory Evidence; His Related Claim for Ineffective Assistance of Counsel Is Without Merit*

a.  *Relevant proceedings*

Prior to trial Gossett moved to dismiss the charges against him, asserting the Santa Monica Police Department had failed to preserve the full, unedited surveillance video from the hospital taken the date of the incident and the failure to preserve the evidence violated his due process rights.  (See *California v. Trombetta* (1984) 467 U.S. 479, 488 [104 S.Ct. 2528, 81 L.Ed.2d 413] [the due process clause of the 14th Amendment requires state law enforcement agencies to preserve evidence "that might be expected to play a significant role in the suspect's defense"]; *People v. Zapien* (1993) 4 Cal.4th 929, 964 [same].)  Had the full video been preserved, Gossett argued, it would have shown Iris leaving the cafeteria within a minute after she disappeared from the camera's view, thus undermining Iris's testimony Gossett had restrained her for "seven to eight minutes."

At an evidentiary hearing in connection with Gossett's motion, Santa Monica Police Detective Duane Hicks testified:  (1) Officer Chris Skogh had viewed unedited surveillance footage at the hospital on August 20, 2008, which showed Iris leaving the cafeteria following the incident; (2) hospital security personnel provided Skogh with a memory card containing the surveillance footage; (3) the footage provided to the police by the hospital ended approximately "one minute early" and thus did not include the footage from the cafeteria surveillance camera showing Iris leaving the cafeteria; and (4) nobody in the police department edited or deleted the surveillance video or requested that it be edited or deleted.  The court denied the motion, finding no evidence the missing portion of the video was exculpatory; and, if the evidence was potentially exculpatory, there had been no showing that the police engaged in misconduct or acted in bad faith.

At trial Officer Skogh acknowledged the video surveillance images shown to the jury were incomplete; he had originally viewed additional surveillance footage showing

reasonableness."  The prosecutor made a nearly identical argument to the jury in his closing statement.

11

Iris leaving the cafeteria "a couple of minutes" after she disappeared from the camera's view, but that footage had not been on the memory card provided to him by the hospital. Litzenberger testified he had downloaded the surveillance video to a memory card for police officers; he did not download any surveillance footage of Iris leaving the cafeteria because he did not realize that part of the surveillance video was pertinent to the investigation. He also testified the footage of Iris leaving the cafeteria was no longer available, explaining the hospital's surveillance system stores information on its hard drive for approximately 30 days then records over it, effectively erasing the previously recorded information.

b. *Gossett's claim of Brady error is forfeited and, in any event, without merit; his counsel was not ineffective for failing to raise it*

Under *Brady v. Maryland* (1963) 373 U.S. 83, 87 [83 S.Ct. 1194, 10 L.Ed.2d 215] the prosecution has a constitutional duty to disclose to a criminal defendant evidence that is "both favorable to the defendant and material on either guilt or punishment." Gossett contends his *Brady* rights were violated because the police failed to retrieve the surveillance footage from the hospital before the system reset and the footage was lost. Gossett acknowledges he did not raise a claim of *Brady* error below (see *People v. Romero* (2008) 44 Cal.4th 386, 411 [constitutional claim forfeited by failure to raise it in the trial court]), but asserts we should consider the claim on its merits because his counsel was constitutionally ineffective in failing to assert *Brady* error. (See *People v. Slaughter* (2002) 27 Cal.4th 1187, 1219 ["'[t]o establish ineffective assistance of counsel under either the federal or state guarantee, a defendant must show that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms, and that counsel's deficient performance was prejudicial, i.e., that a reasonable probability exists that, but for counsel's failings, the result would have been more favorable to the defendant'"].)

Gossett's constitutional argument concerning the missing surveillance videotape on appeal, as it was in the trial court, is premised on the People's failure to preserve the evidence, not the failure to disclose existing exculpatory evidence to the defense.

12

(Compare *California v. Trombetta, supra,* 467 U.S. at p. 489 [addressing government's duty to preserve material evidence] and *Arizona v. Youngblood* (1988) 488 U.S. 51, 56 [109 S.Ct. 333, 102 L.Ed.2d 281] [government's duty to preserve potentially exculpatory evidence] with *Brady v. Maryland, supra,* 373 U.S. at p. 87 [suppression by prosecution of material exculpatory evidence].)[9] Gossett's trial counsel recognized this distinction and made a timely due process objection under *Trombetta* and *Youngblood* related to the government's failure to ensure the full footage was preserved for trial. Gossett does not contend his counsel was ineffective in raising that challenge; nor does he contest the court's ruling on that motion.[10] His argument that counsel should have raised an additional, and inapplicable, due process challenge under *Brady* is entirely without merit.

4. *Gossett Forfeited His Right To Contest the Court's Failure To Hear His New Trial Motion Prior to Sentencing; His Claim Also Fails on Its Merits*

A defendant may seek a new trial on specified grounds at any time up to the pronouncement of judgment, and the court must decide the motion prior to entering judgment. (§ 1182 ["[t]he application for a new trial must be made and determined before judgment"].) "If the court shall refuse to hear a defendant's motion for a new trial or when made shall neglect to determine such motion before pronouncing judgment or the making of an order granting probation, then the defendant shall be entitled to a new trial." (§ 1202; see *People v. Braxton* (2004) 34 Cal.4th 798, 810 (*Braxton*).)

a. *Relevant proceedings*

At the sentencing hearing on June 15, 2011 Gossett's counsel requested a short continuance because, due to a clerical error by his office, his motion for new trial had not been filed. Gossett's counsel promised to file the new trial motion the next day. The

---

[9]     The two lines of authority, of course, are related. *Brady* addresses the government's obligation to disclose material evidence to the defense. *Trombetta* and *Youngblood* address the consequences of the government's failure to preserve the evidence for trial.

[10]     In fact, in his opening appellate brief, Gossett acknowledges defense counsel asserted a due process violation under "a different theory" and asserts his brief is not based on challenging the court's finding under *Trombetta* or *Youngblood* but on the related contention his counsel should have raised a *Brady* violation.

13

court continued the sentencing to June 22, 2011 and indicated no further continuances would be permitted.[11]  Gossett's counsel filed the new trial motion on June 16, 2011; and the People filed their opposition on June 22, 2011, the date of the sentencing hearing.  At the hearing the court stated it wanted to give the defense an opportunity to respond to the People's opposition before ruling on the motion.  At Gossett's request the trial court continued the hearing to July 14, 2011 and, without objection by Gossett, proceeded to sentence Gossett at the June 22nd hearing.[12]  Gossett filed his notice of appeal the same day.

The July 14, 2011 hearing was continued to July 22, 2011.  At the continued hearing date the court realized the new trial motion should have been heard prior to pronouncing sentence and imposing judgment.  In an effort to remedy its error, the court sua sponte recalled the sentence pursuant to section 1170, subdivision (d).  The court then granted Gossett's motion to represent himself at sentencing pursuant to *Faretta v. California* (1975) 422 U.S. 806 [95 S.Ct. 2525, 45 L.Ed. 562], as well as his request to continue the hearing to August 11, 2011 so that he could present a supplemental new trial motion.  On August 11, 2011 the court granted Gossett's request for appointed counsel as well as another continuance.  After several more continuances, mostly at Gossett's request, the court heard and denied Gossett's new trial motion on June 4, 2012 and sentenced Gossett to an aggregate state prison term of nine years, the same sentence it had originally imposed on June 22, 2011.

### b.  *Gossett has forfeited his claim the court violated section 1202*

Gossett contends he is entitled to a new trial under section 1202 because the court sentenced him on June 22, 2011 and pronounced judgment before hearing his new trial motion.  (See *People v. Karaman* (1992) 4 Cal.4th 335, 344 [in criminal case judgment is

---

[11]  The sentencing hearing had been continued several times at defendant's request prior to June 15, 2011.

[12]  The court's actions appear to have been prompted by the prosecutor, who argued, without objection by defense counsel, that a new trial motion "is not reliant on when sentencing happens" and could be considered by the trial court after sentence was imposed.

14

rendered when trial court orally pronounces sentence].) The court could not cure the error by recalling the sentence under section 1170, subdivision (d), he argues, because his filing of a notice of appeal on June 22, 2011 divested the court of its jurisdiction to consider the merits of the new trial motion. (See *People v. Melonay* (2003) 30 Cal.4th 1145, 1153, fn. 3 [once notice of appeal is filed, court retains only limited jurisdiction to recall and modify sentence under § 1170, subd. (d), and does not have jurisdiction to consider matters affecting judgment unrelated to sentence]; *Karaman,* at p. 351 [a court may recall a sentence under § 1170, subd. (d), for reasons "rationally related to lawful sentencing" and not for errors unrelated to sentencing]; see also *People v. Alanis* (2008) 158 Cal.App.4th 1467, 1473 [court erred in invoking § 1170, subd. (d), to recall sentence for purposes of allowing defendant to withdraw guilty plea]; *People v. Pritchett* (1993) 20 Cal.App.4th 190, 194 [court abused its discretion under § 1170, subd. (d), when it recalled sentence for the sole purpose of permitting defendant to file appeal].)

At the threshold Gossett has forfeited his section 1202 claim by, if not inviting, then at least failing to object to imposition of sentence before his new trial motion was heard. (See *Braxton, supra,* 34 Cal.4th at p. 813 ["If the trial court's failure to hear or rule on the new trial motion [prior to sentencing] appears to be inadvertent, the defendant must make some appropriate effort to obtain the hearing or ruling. [Citations] . . . [¶] This is an application of the broader rule that a party may not challenge on appeal a procedural error or omission if the party acquiesced by failing to object or protest under circumstances indicating that the error or omission probably was inadvertent."]; cf. *ibid.* [issue not forfeited where trial court's failure to hear new trial motion prior to sentencing was not the result of inadvertence but from the court's "repeatedly stated decision not to entertain any oral motion for a new trial"].)[13] Gossett's suggestion that such an objection would have been futile is wholly belied by the court's own actions, when, upon discovering its error on its own, it immediately attempted to remedy it.

---

[13] Gossett not only acquiesced in the court's continuance of the new trial motion, but he also elected to file a notice of appeal, thereby depriving the court of jurisdiction to vacate the sentence to permit the motion to be heard prior to imposition of sentence.

c. *Gossett's section 1202 argument fails on its merits because he cannot establish he suffered a miscarriage of justice*

Gossett's argument reversal is required in these circumstances also fails on its merits. A court may reverse for error under section 1202 only when the defendant can show he suffered a miscarriage of justice. (*Braxton, supra,* 34 Cal.4th at p. 818 ["[A] judgment of conviction may not be reversed and a new trial may not be ordered for a trial court's failure to hear a new trial motion when a reviewing court has properly determined that the defendant suffered no prejudice as a result. This will occur when, for example, the record shows that the trial court would have denied the new trial motion and the reviewing court properly determines that the ruling would not have been an abuse of discretion, or the reviewing court properly determines as a matter of law that the motion lacked merit"].) Moreover, even when prejudice has been shown, in lieu of reversal, a reviewing court may remand the cause to the trial court for a belated hearing and ruling on the new trial motion unless defendant can show a fair hearing on the motion is no longer possible. (*Id.* at p. 819.)

Gossett's June 16, 2011 new trial motion was based on section 1181, subdivision 6, authorizing the trial court to grant a new trial when the verdict is contrary to the law or the evidence. [14] Emphasizing Iris's testimony she was restrained for seven to eight minutes, Gossett argued her testimony was not credible in light of substantial contrary evidence. Yet, as discussed, even accepting Gossett's characterization of the evidence, one to two minutes of forcible detention, particularly under circumstances where the victim could not breathe easily or call for help, was a "sufficiently appreciable"

---

[14]     In deciding a new trial motion based on a contention the verdict is contrary to the law or the evidence, the trial court's function is to "see that the jury intelligently and justly perform[ed] its duty and, in the exercise of a proper legal discretion, to determine whether there is sufficient credible evidence to sustain the verdict." (*People v. Robarge* (1953) 41 Cal.2d 628, 634; accord, *People v. Dickens* (2005) 130 Cal.App.4th 1245, 1251.) The trial court's duty is to review the evidence independently; unlike appellate courts reviewing a judgment for substantial evidence, the court is not bound by the jury's determinations as to the credibility of witnesses or as to the weight or effect to be accorded the evidence. (*Robarge,* at p. 633; *Dickens,* at p. 1252.)

16

time of restraint for more than the minimum required to support the verdict. (See *Wilson v. Houston Funeral Home* (1996) 42 Cal.App.4th 1124, 1135 [false imprisonment offense does not contain a duration requirement; confinement can be for any "'"'appreciable length of time, however short"'"']; *Scofield v. Critical Air Medicine, Inc.* (1996) 45 Cal.App.4th 990, 1001 [same]; see *People v. Agnew* (1940) 16 Cal.2d 655, 659-660 ["'[a]ny exercise of force . . . by which in fact the other person is deprived of his liberty or is compelled to remain where he does not wish to remain, or go where he does not wish to go, is [false] imprisonment'"].) Gossett simply has not shown his new trial motion was meritorious or the error in failing to rule on it prior to imposing sentence on June 22, 2011 resulted in a manifest miscarriage of justice.

5. *The Trial Court Did Not Violate Gossett's 1999 Plea Agreement by Treating His Prior Conviction for Making a Criminal Threat as a Strike*

a. *Relevant proceedings*

Pursuant to a negotiated agreement, Gossett pleaded no contest in May 1999 to a charge of violating section 422 (making a criminal threat) (Super. Ct. L.A. County, No. BA168286) in exchange for the dismissal of several other charges. At the time of his plea, a violation of section 422 was not a serious or violent felony within the meaning of the three strikes law; it became a strike the following year with the passage of Proposition 21, approved by the voters at the March 2000 primary election. (See § 1192.7, subd. (c)(38).) Following the jury's verdict, Gossett moved to dismiss the prior strike allegation on the ground use of his 1999 conviction under the three strikes law would violate his plea agreement in the earlier case. The court denied Gossett's motion and also denied his request to hold an evidentiary hearing to determine the elements of his prior plea. The court stated, "I have a copy of the plea agreement [in case no. BA168286] . . . where Mr. Gossett was convicted. . . . I'm not going to go behind the plea and have his attorney or anyone else testify [as to what he may have been promised]. This was a no contest plea that was done in open court. I've reviewed the transcript." The court also denied Gossett's request to dismiss the prior strike conviction under section 1385 in furtherance of justice.

17

b. *The trial court did not err in treating the prior section 422 offense as a strike or in failing to hold an evidentiary hearing concerning any unreported terms of Gossett's plea to that offense*

It is well settled a prior conviction that was not a serious or violent felony at the time it was committed may be used to sentence a defendant under the three strikes law without violating ex post facto provisions of the United States Constitution. (See *People v. Sipe* (1995) 36 Cal.App.4th 468, 477; *People v. Gray* (1998) 66 Cal.App.4th 973, 995; *People v. James* (2001) 91 Cal.App.4th 1147, 1151; *People v. Hatcher* (1995) 33 Cal.App.4th 1526, 1528.) Gossett asserts the law is different, however, when the prior conviction was based on a negotiated plea agreement. The Supreme Court recently addressed a similar question, whether "the law in effect at the time of a plea agreement binds the parties" or whether the consequences of a plea may be affected by subsequent changes in the law. (*Doe v. Harris* (2013) 57 Cal.4th 64, 66 (*Doe*) [addressing question certified by the United States Court of Appeals for the Ninth Circuit for California Supreme Court review].) Distinguishing basic contract principles governing commercial transactions (see *Swenson v. File* (1970) 3 Cal.3d 389, 394 [parties to a contract "are presumed to have had existing law in mind when they executed their agreement [citation]; to hold that subsequent changes in the law which impose greater burdens on responsibilities on the parties become part of that agreement would result in modifying it without their consent"]) from those governing plea agreements in criminal cases (see *People v. Gipson* (2004) 117 Cal.App.4th 1065, 1070 [plea bargains in California are "'deemed to incorporate and contemplate not only the existing law but the reserve power of the state to amend the law or enact additional laws for the public good and in pursuance of public policy . . .'"]), the Court held the consequences of a plea agreement may change based on subsequent amendments to the relevant law: "[P]arties to a plea agreement—an agreement unquestionably infused with a substantial public interest and subject to the plenary control of the state—are deemed to know and understand that the state, again subject to the limitations imposed by the federal and state Constitutions, may enact laws that will affect the consequences attending the conviction entered upon the

18

plea." (*Doe*, at p. 70; accord, *Gipson,* at p. 1070 [defendant's plea to offense predating amendment to three strikes law could be used as a basis for sentencing defendant under current three strikes law without violating prior plea agreement].)

Recognizing *Doe* is controlling,[15] Gossett emphasizes the Supreme Court addressed only whether silence in a plea agreement, coupled with a reference to a specific statute, could give rise to an implicit promise the defendant would be unaffected by a later amendment to the relevant law. Seizing on language in *Doe* acknowledging, in theory, the parties to a plea agreement could affirmatively agree the consequences of a plea will remain fixed despite subsequent amendments to the relevant law and observing "[w]hether such an understanding exists presents factual issues that generally require an analysis of the representations made and other circumstances specific to the individual case" (*Doe, supra,* 57 Cal.4th at p. 71), Gossett contends the trial court should have granted his request for an evidentiary hearing to determine whether such a promise was made to him.

No evidentiary hearing was required in this case. The trial court reviewed the full contents of the plea agreement in the 1999 case, the terms of which were apparently stated on the record and approved by the court in that case. (See *People v. Segura* (2008) 44 Cal.4th 921, 930 [plea agreement is a contract negotiated by People and defendant and effective only when approved by court]; see also *People v. West* (1970) 3 Cal.3d 595, 611 [recording the terms of the bargain affords to the appellate court a "complete account of proceedings" and obviates the need for an evidentiary hearing, "a costly, time-consuming and often unsatisfactory method of reconstructing the bargain"].)[16] Absent some

_____

[15]     *Doe* was decided after opening briefs were filed; Gossett addressed the case in his reply brief.

[16]     The record on appeal does not include the transcript of the 1999 plea agreement reviewed by the court. Consequently, we presume the court's characterization of the 1999 plea was correct and the agreement was silent as to consequences of any future amendments to the three strikes law. (See *Chin v. Namvar* (2008) 166 Cal.App.4th 994, 1009 [reviewing court must presume judgment is correct; it is up to appealing party to

19

identifiable ambiguity in the agreement or challenge to the underlying validity of the plea itself for which extrinsic evidence would be helpful (see *People v. Shelton* (2006) 37 Cal.4th 759, 767), any ancillary discussions concerning the effect of the 1999 conviction in the event of an amendment to the relevant law are immaterial. (See *ibid.* [if language in plea is clear and explicit, it governs]; *People v. Puente* (2008) 165 Cal.App.4th 1143, 1149 [same].) Unless identified in the record and approved by the court, such pre-plea discussions are not part of the bargain. (*Segura,* at p. 930 [judicial approval is an "essential condition precedent to the effectiveness of the 'bargain'"]; see also §§ 1192.1-1192.4 [requiring court approval to plea].)

6. *The Sentence on the Misdemeanor Sexual Battery Conviction Should Be Stayed Under Section 654*

Section 654 prohibits punishment for two or more offenses arising from the same act or from a series of acts constituting an indivisible course of conduct. (*People v. Lewis* (2008) 43 Cal.4th 415, 419; *People v. Latimer* (1993) 5 Cal.4th 1203, 1216.)[17] Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. If all the offenses were incident to one objective, the defendant may be punished for any one of the offenses but not more than one. (*People v. Correa* (2012) 54 Cal.4th 331, 336.)

Generally, the trial court has broad discretion in determining whether a defendant had multiple criminal objectives independent of, and not merely incidental to, each other for purposes of section 654. On appeal we will uphold the court's express or implied finding a defendant had multiple criminal objectives if it is supported by substantial evidence. (*People v. Osband* (1996) 13 Cal.4th 622, 730-731.)

---

provide an adequate record and affirmatively demonstrate error]; *Srithong v. Total Investment Co.* (1994) 23 Cal.App.4th 721, 725, fn. 3 [same].)

[17]    Section 654, subdivision (a), provides, "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision. An acquittal or conviction and sentence under any one bars a prosecution for the same act or omission under any other."

Gossett contends, and the People agree, there is no substantial evidence to support the court's implied finding Gossett had separate intents and objectives in committing the two offenses.[18] Both cite the prosecutor's closing argument: "There's only one reason [Gossett] touched Iris. . . . It's sexual arousal. It's the reason he's following her behind the corner."

While we can envision circumstances when false imprisonment and sexual battery committed concurrently might nonetheless be based on separate intents and objectives, we agree with Gossett and the People there is no substantial evidence to support such an implied finding here: The false imprisonment was committed by Gossett solely to accomplish the sexual battery. (Cf. *People v. Latimer, supra,* 5 Cal.4th at p. 1206 [multiple punishment for kidnapping and rape violated § 654; "[a]lthough the kidnapping and the rapes were separate acts, the evidence does not suggest any intent or objective behind the kidnapping other than to facilitate the rapes"].) Accordingly, we modify the sentence to stay imposition of sentence on the misdemeanor sexual battery conviction pursuant to section 654. (*People v. Deloza* (1998) 18 Cal.4th 585, 591-592 [under § 654, sentence on additional conviction should be stayed rather than imposed concurrently]; *People v. Alford* (2010) 180 Cal.App.4th 1463, 1469 [same].)

---

[18] Although section 654 was not raised by either party or expressly addressed by the court at sentencing, we infer from the court's concurrent sentence choice an implied finding Gossett harbored separate intents and objectives for the two offenses. (See *People v. Alford* (2010) 180 Cal.App.4th 1463, 1469 [when trial court sentences defendant to separate terms without making express finding defendant entertained separate objectives, court is deemed to have made an implied finding § 654 does not apply]; *People v. Garcia* (2008) 167 Cal.App.4th 1550, 1564-1565 ["implicit in the trial court's concurrent sentencing order is that defendant entertained separate intentions"].)

## DISPOSITION

The sentence is modified to stay imposition of sentence on the sexual battery conviction pursuant to section 654.  As modified the judgment is affirmed.  The superior court is directed to prepare a corrected abstract of judgment and forward it to the Department of Corrections and Rehabilitation.


PERLUSS, P. J.


We concur:


ZELON, J.


SEGAL, J.[*]

---

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.