Filed 3/4/21 Coffman v. Dept. of Transportation CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| AMALIA COFFMAN et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> CALIFORNIA STATE DEPARTMENT OF TRANSPORTATION et al., <br><br> Defendants and Respondents. | H046473 <br> (Monterey County <br> Super. Ct. No. 17CV000819) |

Decedent John Coffman, a longtime employee of the California Department of Transportation (Caltrans), died by suicide in 2015. His wife and son (the Coffmans or appellants) sued Caltrans and Coffman's supervisor, Michael Nelson, for wrongful death. They allege that Coffman was bullied, ridiculed, and harassed at work by a number of coworkers and that Caltrans and Nelson failed to prevent those acts, causing Coffman's death. Caltrans and Nelson moved for summary judgment on the basis of their affirmative defense that the Coffmans' claims are barred by workers' compensation exclusivity. The trial court granted that motion. The Coffmans appeal. We shall affirm.

I.    **BACKGROUND**

    *A.    Undisputed Facts*

    Since at least May 1998, Caltrans has had a "zero tolerance" policy for workplace violence, including threats, harassment, verbal abuse, bullying, and intimidation.[1] Nelson

---

[1] The Caltrans workplace violence prevention policy that was in effect from May 1, 1998 until November 5, 2012 was numbered DP-18 and stated, in part: "It is

was among the individuals tasked with responding to employee complaints alleging bullying and other workplace violence.

Coffman began working for Caltrans doing landscape maintenance work in the early 2000s. Nelson was his supervisor. Coffman submitted numerous written complaints about various coworkers, most alleging workplace violence, between 2002 and his 2015 death, as described below.

In May 2002, Coffman reported to supervisor Denise Roberts that fellow employee David Craig had reprimanded him for cleaning bird droppings off a Caltrans vehicle using a squeegee as opposed to the vehicle wash area brush. When Coffman attempted to explain his actions, Craig responded by saying that he did not like stupidity. Coffman replied that Craig had an "abusive attitude" and that Coffman would not be "used as a rug." Craig eventually told Coffman to get out of his office. Coffman's complaint accused Craig of verbal abuse and intimidation.

In September 2004, Coffman reported to Nelson that Edgar Short, a fellow Caltrans employee, had yelled "you're a fucking idiot and I'll go to fist[i]cuffs with you" at Coffman, apparently because Short wanted Coffman to drive rather than driving himself.

_____

Caltrans Policy to conduct business, provide services, and protect its employees and the public from harm by providing a safe and secure work environment that has zero tolerance for violence, threats, harassment, and intimidation. Intimidating behaviors would include shouting, slamming doors, and throwing objects. Regardless of an individual's actual intent, a threat, either direct or indirect, to do harm to another employee or member of the public will result in an adverse action against the employee, such as dismissal from State service."

DP-18 was superseded on November 5, 2012 by DP-18-R1, which stated, in part: "It is the California Department of Transportation (Caltrans) policy to conduct business, provide services, and protect its employees and the public from harm by providing a safe and secure work environment that has zero tolerance for acts and/or threats of violence. Regardless of an individual's actual intent, violence against another employee or member of the public will result in disciplinary action against the employee ranging from a corrective interview up to and including dismissal from State service."

In 2006, Coffman complained in writing (both personally and through an attorney) about Caltrans employees illegally smoking in government buildings and vehicles. Then-leadworker David Craig, allegedly in retaliation, "berat[ed]" Coffman for "putting [his] nose in other people's business" and for writing "memos and letters." Following that incident, Coffman's blood pressure was elevated and, on his doctor's orders, he was excused from work for three weeks.

In July 2008, Coffman reported to supervisor Steve Phillips that a co-worker, Harry Bertrand, had yelled "[f]uck you" and displayed an obscene hand gesture at Coffman after Coffman reported to a supervisor that Bertrand had urinated in public. In August 2008, an attorney sent a follow-up letter to Phillips indicating that Coffman had not received a response to his complaint.

In June 2010, Coffman reported to supervisor Joel Wright that coworker Aerie Starbird had angrily and falsely accused Coffman of taking Starbird's picture; falsely accused Coffman of cutting a padlock off Starbird's locker; said over the radio "what are you going to screw up now John," referring to Coffman; and called Coffman a liar.

In September 2011, Coffman reported to safety officer Mike Mendoza that coworker Joe Rodzach had said something "extremely embarrassing and offensive" to him during a safety meeting. Specifically, during a discussion about the use of personal mobile phones, Rodzach said a Caltrans fuel vendor was allowed to use a mobile phone while driving for work. Coffman then asked Rodzach what statute applied and Rodzach responded "loudly and angrily, 'He didn't say. What are you a judicial officer!' " During an investigation of the incident, four employee witnesses were interviewed. Three of those employees stated that Coffman interrupted Rodzach. All of the employees agreed that Rodzach's statement to Coffman was not threatening. The investigator concluded that no workplace violence had taken place.

3

In April 2013, Coffman reported to leadworker Tharon Franklin that co-worker Javier Flores had instructed Coffman to spray in an area that required him to walk on ice plant despite Flores knowing that Coffman had a right ankle disability. At the time, Coffman "said okay to avoid a potential problem." Coffman further reported that Flores, upon noticing that one of the flashers on Coffman's vehicle was not working, criticized Coffman for failing to inspect his vehicle before checking it out. In fact, Coffman had not checked out the vehicle, another co-worker had done so. Finally, Flores had rudely shouted at Coffman to move his vehicle despite Coffman having previously informed Flores that the vehicle was not functioning.

In August 2013, Coffman reported to Nelson that co-worker Gary Lafontaine had yelled "[f]uck you" at Coffman in a disagreement over which of them would complete some work-related paperwork; Lafontaine later apologized. The incident was investigated. Lafontaine stated that he felt "needled" by Coffman but acknowledged that he should not have yelled. Lafontaine was counseled to let go of his anger, while Coffman was advised to "tone down his 'humor' " and that "people don't look at things like he does." The investigator concluded that the incident did not constitute workplace violence.

In September 2013, Coffman reported to Nelson that co-worker Short had repeatedly asked Coffman to put Short's name on Coffman's time sheet until Coffman had agreed. Short then yelled at Coffman: "you bald headed son-of-a-bitch!"

In March 2014, Coffman reported to Franklin that Flores had taken a trimmer assigned to Coffman without permission and had returned it without cleaning it.

In July 2014, Coffman and Flores got into an argument about fixing a broken woodchipper. Coffman called Flores a "lazy son-of-a-bitch." Flores shoved Coffman, who fell to the ground. Flores then punched Coffman in the face and head multiple times. Coffman went to the emergency room, where he received medical care for his

4

injuries. Nelson investigated the incident and concluded that Flores had violated Caltrans's workplace violence policy. Flores was fired.

In a document dated December 21, 2015, Coffman described several incidents involving co-worker Short that occurred in 2014 and 2015.[2] According to Coffman, Short had stolen two small bottles of hand sanitizer belonging to Coffman, taken Coffman's hat without permission and returned it the next day, "hid[den]" Coffman's shirt in one of Coffman's assigned lockers, removed gloves from Coffman's chemical locker, repeatedly closed Coffman's gear locker so that Coffman had to reopen it using the combination lock, moved Coffman's personal cell phone without permission and scratched the screen, moved Coffman's lunch pail, "pretended to talk like a homosexual" and lightly tugged on Coffman's right earlobe, and told Coffman he laughed like a woman. Short also had "shoved a round point shovel within inches of [Coffman's] face" and "demand[ed]" that Coffman put it away. Coffman had refused. Coffman attributed Short's behavior to "jealousy." The incident in which Short took Coffman's shirt took place on October 2, 2015. Coffman immediately reported the incident to Nelson and Caltrans's human resources department and filed a theft report with the California Highway Patrol. The incident caused Coffman to be "extremely stressed out." The following day, Coffman went to the hospital; his blood pressure was elevated, and he was prescribed medication to "help [him] cope."

Coffman was placed on leave due to emotional distress. He was scheduled to return to work on January 4, 2016. Coffman committed suicide on December 30, 2015.

**B.     *Procedural History***

The Coffmans sued Caltrans and Nelson in March 2017. They did so after submitting government claims forms to the California Victim Compensation and

---

[2] The record does not establish that this list was provided to Caltrans before Coffman's death nine days later. However, the document states that the "acts . . . have been reported" and that "Nelson was informed."

5

Government Claims Board and having those claims rejected by the Government Claims Program as "beyond the scope of analysis and legal interpretation typically undertaken by the" Government Claims Program and "best determined by the courts." The Coffmans filed the operative first amended complaint, which asserts four wrongful death claims against Caltrans and Nelson, in August 2017. Nelson and Caltrans moved for summary judgment on grounds that the Coffmans' claims are barred by workers' compensation exclusivity. The trial court granted that motion. On September 26, 2018, the court entered judgment against the Coffmans and in favor of Nelson and Caltrans.

The Coffmans timely appealed.

## II. DISCUSSION

### A. *Legal Principles*

#### 1. *Summary Judgment Principles and Standard of Review*

"A defendant moving for summary judgment has the burden of showing that a cause of action lacks merit because one or more elements of the cause of action cannot be established or there is a complete defense to that cause of action." (*Jones v. Wachovia Bank* (2014) 230 Cal.App.4th 935, 945.) The workers' compensation exclusivity rule is one such complete defense. Where the defendant carries its initial burden to show that undisputed facts support each element of a defense, the burden shifts to plaintiff to show that there is a triable issue of material fact as to the defense. (*Melendrez v. Ameron Internat. Corp.* (2015) 240 Cal.App.4th 632, 638.)

In reviewing an order granting summary judgment, we review the entire record de novo in the light most favorable to the nonmoving party to determine whether the moving and opposing papers show a triable issue of material fact. (*Addy v. Bliss & Glennon* (1996) 44 Cal.App.4th 205, 214.)

#### 2. *Workers' Compensation Principles*

The Workers' Compensation Act (WAC; Lab. Code, § 3200 et seq.) is "a comprehensive statutory scheme governing compensation given to California

6

employees for injuries incurred in the course and scope of their employment." (*Charles J. Vacanti, M.D., Inc. v. State Comp. Ins. Fund* (2001) 24 Cal.4th 800, 810 (*Vacanti*).) Central to the statutory scheme is the so-called "compensation bargain," under which "the employer assumes liability for industrial personal injury or death without regard to fault in exchange for limitations on the amount of that liability" and "[t]he employee is afforded relatively swift and certain payment of benefits to cure or relieve the effects of industrial injury without having to prove fault but, in exchange, gives up the wider range of damages potentially available in tort." (*Shoemaker v. Myers* (1990) 52 Cal.3d 1, 16.)

"To give effect to the compensation bargain underlying the system, the WCA generally limits an employee's remedies against an employer for work-related injuries to those remedies provided by the statute itself." (*King v. CompPartners, Inc.* (2018) 5 Cal.5th 1039, 1051, citing Lab. Code, §§ 3600, subd. (a), 3602, subd. (a).) This general rule is referred to as workers' compensation exclusivity.

"To prevent employees from circumventing the exclusivity rule by bringing lawsuits for work-related injuries against coemployees, who in turn would seek indemnity from their employers, the Legislature in 1959 provided immunity to coemployees. ([Lab. Code,] § 3601, subd. (a), as amended by Stats. 1959, ch. 1189, § 1, p. 3275 [amending § 3601 to substantially its current version].) . . . Therefore, workers' compensation was also made the exclusive remedy against fellow employees acting within the scope of employment." (*Torres v. Parkhouse Tire Service, Inc.* (2001) 26 Cal.4th 995, 1002 (*Torres*).)

"In determining whether exclusivity bars a cause of action . . . , courts initially determine whether the alleged injury falls within the scope of the exclusive remedy provisions. Where the alleged injury is 'collateral to or derivative of' an injury compensable by the exclusive remedies of the WCA, a cause of action predicated on that injury may be subject to the exclusivity bar." (*Vacanti, supra*, 24 Cal.4th at p. 811.)

7

If the alleged injury falls within the scope of the exclusive remedy provisions, courts consider the nature of the underlying acts. Workers' compensation exclusivity bars civil actions based on employer actions that " 'are a normal part of the employment relationship, such as demotions, promotions, criticism of work practices, and frictions in negotiations as to grievances,' " even where such actions are characterized " 'as manifestly unfair, outrageous, harassment, or intended to cause emotional disturbance resulting in disability.' " (*Fermino v. Fedco, Inc.* (1994) 7 Cal.4th 701, 712 (*Fermino*).) Conduct that courts have held to be a normal part of the employment relationship for purposes of workers' compensation exclusivity include harassment in union negotiations, false accusations of misconduct, and efforts to force an employee's involuntary retirement (all carried out in retaliation for union activities) (*Cole v. Fair Oaks Fire Protection Dist.* (1987) 43 Cal.3d 148, 152-153, 161 (*Cole*)), as well as yelling, humiliation, and the use of insults and profanities by an employer against an employee, where such conduct "involved criticisms of job performance or other conflicts arising from the employment." (*Singh v. Southland Stone, U.S.A., Inc.* (2010) 186 Cal.App.4th 338, 367-368 (*Singh*).)

By contrast, workers' compensation exclusivity does not bar civil actions based on "certain types of intentional employer conduct which bring the employer beyond the boundaries of the compensation bargain." (*Fermino*, *supra*, 7 Cal.4th at p. 714.) For example, employer conduct that " 'violates the fundamental policy of this state' " (e.g., discharging an employee in violation of public policy) falls outside the compensation bargain. (*Id.* at pp. 714-715.) Employer conduct that courts have held to fall outside the compensation bargain includes "false imprisonment committed by an employer against an employee" (*id.*, at p. 723); "violent and coercive criminal conduct committed against an employee's person" (*Vacanti*, *supra*, 24 Cal.4th at p. 822 [citing cases]; and " 'illegal discriminatory practices' " (*Murray v. Oceanside Unified School Dist.* (2000) 79 Cal.App.4th 1338, 1362).

8

**B.**    ***Appellants Failed to Raise a Triable Issue of Fact as to the Applicability of the Workers' Compensation Exclusivity Defense***

It is undisputed for purposes of the summary judgment motion that Coffman's death falls within the scope of the WCA's exclusive remedy provisions and that Nelson was acting within the scope of his employment at all relevant times. At issue is whether the conduct of Nelson and Caltrans fell outside the compensation bargain such that workers' compensation exclusivity does not bar appellants' action.

Appellants advance two arguments for why their claims are not barred. First, they maintain that the conduct of Coffman's coworkers amounted to harassment, which they assert falls outside the compensation bargain. They further argue that Caltrans and Nelson ratified that conduct by failing to prevent it, such that they may be held liable for it. Second, appellants contend that Caltrans and Nelson's failure to enforce Caltrans's workplace violence prevention policy violated a fundamental policy of this state. Below, we consider these arguments in connection with each of appellants' causes of action.

### 1.    *Count 1*

Count 1, a wrongful death claim based on negligence, alleges that Nelson and Caltrans negligently failed to prevent bullying and other workplace violence and that "[s]aid negligence caused John Coffman to suffer from a mental condition which resulted in an uncontrollable impulse to commit suicide . . . ." Count 1 seeks to impose liability on Nelson and Caltrans for their inadequate enforcement of Caltrans's workplace violence prevention policy. As appellants themselves note, enforcing that policy was one of Nelson's job responsibilities. As such, his alleged misconduct as it relates to the enforcement of that policy is squarely within the scope of his employment and was a " 'normal part of the employment relationship.' " (*Fermino*, *supra*, 7 Cal.4th at p. 712.) Moreover, the stated goal of Caltrans's workplace violence prevention policy is to "provid[e] a safe and secure work environment." "Workplace safety is clearly an issue contemplated by the workers' compensation statutory scheme." (*Lenk v. Total-Western*,

*Inc.* (2001) 89 Cal.App.4th 959, 973; see *Vuillemainroy v. American Rock & Asphalt, Inc.* (1999) 70 Cal.App.4th 1280, 1286, fn. omitted ["injuries caused by unsafe working conditions are compensable solely under workers' compensation, even if the employer recklessly or deliberately failed to correct known safety violations"].)

Again, count 1 is premised on Nelson and Caltrans's *own conduct* with regard to the enforcement of the workplace violence prevention policy, and not on the conduct of Coffman's coemployees that allegedly violated that policy. Therefore, appellants' contention that workers' compensation exclusivity does not bar claims based on coemployee conduct that was outside the compensation bargain and was ratified by Caltrans and Nelson has no application to count 1.

Appellants' alternative argument is that Caltrans and Nelson violated a fundamental policy of this state, thereby placing their conduct outside the compensation bargain and making workers' compensation exclusivity inapplicable. Below and in their opening brief, appellants identified Caltrans's policy against workplace violence as the pertinent fundamental public policy. But not every employment policy of every state agency constitutes a fundamental public policy. Rather, fundamental public policies are those "expressed in . . . constitutional or statutory provision[s]." (*Turner v. Anheuser-Busch, Inc.* (1994) 7 Cal.4th 1238, 1252; *Miklosy v. Regents of University of California* (2008) 44 Cal.4th 876, 898 [" 'fundamental policies . . . [are those] delineated in constitutional or statutory provisions' "].) Appellants point to no statutory or constitutional provision prohibiting workplace violence. Accordingly, they failed to raise a triable issue of fact as to whether Nelson and Caltrans violated a fundamental public policy.

For the first time on reply, appellants argue that Caltrans and Nelson violated fundamental public policies ensuring public safety on the roadways and protecting whistleblowers. "Obvious reasons of fairness militate against consideration of an issue raised initially in the reply brief of an appellant." (*Varjabedian v. City of Madera* (1977)

10

20 Cal.3d 285, 295, fn. 11.)  Accordingly, "[p]oints raised in the reply brief for the first time will not be considered, unless good reason is shown for failure to present them before."  (*Campos v. Anderson* (1997) 57 Cal.App.4th 784, 794, fn. 3.)  Because appellants have not shown good cause for raising these policies belatedly, we will not consider them.

For all the foregoing reasons, appellants failed to raise a triable issue of fact as to the applicability of the workers' compensation exclusivity defense to count 1.

### 2.    *Count 2*

Count 2 alleges a wrongful death claim based on a violation of Government Code section 12940, subdivision (h).[3]  That provision makes it an unlawful employment practice to retaliate against an employee because that employee opposed any practice forbidden by the Fair Employment and Housing Act (§ 12900 et seq.; FEHA) or because the employee filed a complaint, testified, or assisted in any proceeding under the FEHA. (§ 12940, subd. (h).)

"[T]he purpose of FEHA is to protect and safeguard the right and opportunity of all persons to obtain and hold employment and housing without discrimination on account of race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, age, sexual orientation, or military and veteran status." (*Nejadian v. County of Los Angeles* (2019) 40 Cal.App.5th 703, 723 (*Nejadian*), citing § 12920.)  Among other things, the FEHA prohibits discrimination in employment and harassment of employees based on race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, age, sexual orientation, or veteran or military status.  (§ 12940.)

---

[3] All further statutory citations are to the Government Code unless otherwise indicated.

11

The first amended complaint alleges that the complained-of conduct by Coffman's coworkers was done "in retaliation for decedent Coffman's reporting of various workplace violations committed by said co-workers . . . [, which reporting] was protected by California Government Code §12940(h)." It further alleges that Nelson and Caltrans ratified that retaliatory and illegal conduct by failing to prevent it.

Appellants urge us to consider "the entirety of [the] conduct targeting Coffman," which they characterize as harassment. Appellants suggest that harassing behavior always falls outside the compensation bargain. In fact, "an employee . . . may not avoid the exclusive remedy provisions of the Labor Code by characterizing" actions that are a normal part of the employment relationship "as . . . harassment . . . ." (*Cole*, *supra*, 43 Cal.3d at p. 160; *id.* at p. 161 ["Some harassment by superiors when there is a clash of personality or values is not uncommon"].) It is true that harassment in violation of the FEHA is outside the compensation bargain. (*Light v. Department of Parks & Recreation* (2017) 14 Cal.App.5th 75, 100 (*Light*).) But count 2 is not premised on such illegal harassment.

Retaliation in violation of the FEHA, which count 2 does allege, likewise is outside the compensation bargain. (*Light*, *supra*, 14 Cal.App.5th at p. 101.) But a plaintiff opposing summary judgment may not "rely upon the allegations or denials of its pleadings" but must set forth "specific facts" beyond the pleadings to show the existence of a triable issue of material fact. (Code Civ. Proc., § 437c, subd. (p)(2).) To establish retaliation in violation of the FEHA, an employee must show that he or she was retaliated against for engaging in a "protected activity." (*Nejadian*, *supra*, 40 Cal.App.5th at p. 722.) Here, no record evidence shows that Coffman engaged in a protected activity, such as opposing discrimination or harassment based on race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, age, sexual orientation, or veteran or military status. Instead, the evidence shows he opposed illegal

12

smoking, public urination, and workplace violence. Accordingly, appellants failed to raise a triable issue of fact as to whether the complained-of conduct was outside the compensation bargain because it constituted retaliation in violation of the FEHA.

Analyzing the incidents individually reveals that the majority of the complained-of conduct by Coffman's coworkers was within the compensation bargain. The incident in which Flores battered Coffman is an obvious exception, but that incident was investigated, Flores was found to have violated Caltrans's workplace violence policy, and he was fired. Accordingly, Caltrans and Nelson cannot be said to have ratified that conduct and thus cannot be held liable for it.

Turning to the other conduct at issue, certain episodes involved criticism of Coffman's job performance, including the 2002 incident in which Craig reprimanded Coffman's use of a squeegee to clean a vehicle and the 2013 incident in which Flores criticized Coffman for failing to inspect his vehicle. Such criticisms arise "from risks encompassed within the compensation bargain," even when they are leveled in an "offensive and clearly inappropriate" manner. (*Singh*, *supra*, 186 Cal.App.4th at pp. 367-368 [misconduct by employer against plaintiff employee, including "berat[ing] and humiliate[ing] him, criticiz[ing] his job performance, and insult[ing] him with profanities on a regular basis," held to be within the compensation bargain].)

Other complained-of conduct occurred in the context of disputes with coworkers as to the performance of work duties. Specifically, Short verbally lashed out at Coffman in 2004 during a disagreement about which of them would drive. Lafontaine shouted profanity at Coffman during a 2013 argument over who would complete certain work-related paperwork. Also in 2013, Flores rudely told Coffman to move a Caltrans vehicle, a task Coffman could not complete because—as Flores had been made aware— the vehicle was inoperable. In 2014, Flores—in the completion of his landscape work for Caltrans—used a Caltrans-owned trimmer assigned to Coffman without permission and returned it without cleaning it. Each of these conflicts arose directly from Coffman's

13

employment and the discharge of his (and his coemployees') work duties. The coemployees' use of coarse language and flashes of anger do not place their conduct outside the compensation bargain. As our Supreme Court has acknowledged, " ' "[i]n bringing [people] together, work brings [personal] qualities together, causes frictions between them, creates occasions for lapses into carelessness, and for fun-making and emotional flareup. . . . These expressions of human nature are incidents inseparable from working together. They involve risks of injury and these risks are inherent in the working environment." [Citations.]' [Citation.]" (*Torres*, *supra*, 26 Cal.4th at p. 1009.)

Other incidents involved personality clashes and interpersonal conflicts of the sort that routinely arise in the workplace. These include the incidents involving Bertrand, Rodzach, and Starbird. As noted above, friction between coworkers is a normal risk of employment. (See *Cole*, *supra*, 43 Cal.3d at p. 161 ["Some harassment [of employees] by superiors when there is a clash of personality or values is not uncommon"].)

Whether Short's treatment of Coffman in 2014 and 2015, which involved a series of pranks and one possibly threatening act involving a shovel, was outside the scope of the compensation bargain is a closer call. Apart perhaps from the shovel incident, the acts appear to have been personal in nature, unrelated to any genuine employment-related matter. (See *Vacanti*, *supra*, 24 Cal.4th at p. 820 ["we have held that conduct 'having a "questionable" relationship to the employment' is not protected by the exclusivity rule"].) And while each individual incident might be characterized simply as friction between coworkers or harmless fun-making, the persistent nature of the conduct may take it outside the scope of the compensation bargain. We shall assume appellants raised a triable issue of fact as to whether Short's conduct in 2014 and 2015 was outside the scope of the compensation bargain.

Next, we consider whether appellants raised a triable issue of fact as to ratification of that conduct by Nelson and Caltrans. " ' "[A]n employer may be liable for an employee's act where the employer . . . subsequently ratified an originally unauthorized

14

tort. [Citations.] . . . The theory of ratification is generally applied where an employer fails to investigate or respond to charges that an employee committed an intentional tort, such as assault or battery. [Citations.] Whether an employer has ratified an employee's conduct is generally a factual question. [Citation.]" ' " (*Ventura v. ABM Industries Inc*. (2012) 212 Cal.App.4th 258, 272.)

The record demonstrates that Coffman immediately reported the October 2015 shirt-stealing incident to Nelson. That appears to have been the final incident, shortly after which Coffman was placed on leave. However, the record contains no evidence showing that Coffman contemporaneously reported the other incidents involving Short to Nelson or another supervisor. Coffman documented those incidents in writing on December 21, 2015 and wrote that the "acts . . . have been reported" and that "Nelson was informed," but the record is silent as to *when* those reports were made. In our view, the timing of those reports is critical to the ratification analysis because it is the ongoing and incessant nature of the conduct that potentially takes it outside the compensation bargain. Given the absence of evidence that each incident was reported to a supervisor and no action was taken to address the conduct with Short, we cannot conclude that appellants have raised a triable issue of fact as to ratification.

For all these reasons, appellants failed to raise a triable issue of fact as to the applicability of the workers' compensation exclusivity defense to count 2.

### 3. Count 3

Count 3 asserts a claim of wrongful death based on a violation of section 12940, subdivision (j)(1), a provision of the FEHA that makes it unlawful "to harass an employee" "because of race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, age, sexual orientation, or veteran or military status . . . ." The operative complaint alleges that, on a single occasion,

15

coemployee Flores instructed Coffman to spray in an area that required him to walk on ice plant, a task Flores knew would cause Coffman pain due to a right ankle disability of which Flores was aware. The complaint further alleges that, in failing to prevent that incident, Nelson and Caltrans harassed Coffman because of a medical condition in violation of section 12940, subdivision (j)(1).

To the extent that appellants are arguing that Nelson and Caltrans ratified Flores's conduct, that conduct—instructing Coffman to complete a specific work-related task— was within the compensation bargain. That Flores may have acted insensitively in that context does not place his conduct outside the compensation bargain. Coffman's written complaint to leadworker Franklin about the incident did not suggest that Flores targeted Coffman *because of his medical condition*, but rather that this was an example of "Flores'[s] constant bullying" of Coffman and others. Accordingly, appellants failed to raise a triable issue of fact as to whether Flores's conduct was outside the compensation bargain because it violated the FEHA.

To the extent that appellants are basing liability on Caltrans and Nelson's failure to anticipate and prevent Flores from making the work assignment, that conduct (involving as it does the management of employees and work assignments) was a normal part of the employment relationship and thus was within the compensation bargain. Appellants also fail to explain how a single omission by Nelson and Caltrans to anticipate and prevent Flores's action could be considered harassment under the FEHA and thus outside the compensation bargain. In the context of the FEHA, "harassment focuses on situations in which the *social environment* of the workplace becomes intolerable because the harassment (whether verbal, physical, or visual) communicates an offensive message to the harassed employee." (*Roby v. McKesson Corp.* (2009) 47 Cal.4th 686, 706.)

In sum, appellants failed to raise a triable issue of fact as to the applicability of the workers' compensation exclusivity defense to count 3.

16

### 4. *Count 4*

Count 4, a wrongful death claim based on a violation of Labor Code section 6401.7, alleges that Nelson and Caltrans violated that provision's requirement that employers "establish, implement, and maintain an effective injury prevention program" by failing to enforce Caltrans's workplace violence prevention policy. As discussed in the context of count 1, Nelson and Caltrans's enforcement (or lack thereof) of the workplace violence prevention policy was within the compensation bargain. Significantly, there is no allegation that the conduct of Coffman's coemployees violated Labor Code section 6401.7 and was ratified by Nelson and Caltrans. Thus, appellants' argument that coemployee conduct was outside the compensation bargain is inapplicable to count 4. And, for the reasons discussed in connection with count 1, appellants have failed to raise a triable issue of fact as to whether Nelson and Caltrans violated a fundamental pubic policy. It follows that appellants have failed to raise a triable issue of fact as to the applicability of the workers' compensation exclusivity defense to count 4.

## III. DISPOSITION

The judgment is affirmed.

17

_____

ELIA, ACTING P.J.

WE CONCUR:


_____

BAMATTRE-MANOUKIAN, J.


_____

DANNER, J.


*Coffman et al. v. California State Department of Transportation*
H046473